Milburn et al v. The City of Cedar Rapids and The Chicago, Iowa and
Nebraska Railroad Company.

MILBURN *et al.* v. THE CITY OF CEDAR RAPIDS, AND THE
CHICAGO, IOWA AND NEBRASKA RAILROAD COMPANY.

1. THE FEE IN STREETS IN TOWNS AND CITIES.  The fee in the streets of
towns and cities laid out and platted under the act approved January
25th, 1839, and the Code of 1851, vests in the corporation in trust for
the public, and not in the owners of the lots fronting thereon.  The
only interest such owners have in such streets is the right of way
over the same.

2 CASES EXPLAINED.  The cases of *Haight* v. *The City of Keokuk*, 4 Iowa,
and *Malony* v. *The City of Dubuque*, 9 Ib., explained and held inappli-
able to towns and cities laid out and platted under the statutes above
mentioned.

3. SAME: RIGHT OF WAY.  The legislature of this State has conferred
upon railroad companies the right to construct their roads over and
upon the streets of towns and cities, the consent of the council of the
town or city, through which the road passes being first obtained; and
railroads constructed upon streets under such authority cannot be
considered as public nuisances.

4. STATUTE CONSTRUED.  The 8th section of "an act granting to railroad
companies the right of way," Session Laws of 1858, p. 53, cited and
construed.

Milburn et al. v. The City of Cedar Rapids, and The Chicago, Iowa and Nebraska Railroad Company.

*Appeal from Linn District Court.*

THURSDAY, OCTOBER 17.

*I. M. Preston* and *Cook & Belt* for the appellant, contended:

1. That a rail road corporation has no right to use a public street or highway, to build their rail road on, unless expressly authorized to do so by the legislature; and when so authorized the highway is so far vacated as may be necessary for the purposes of the railway.

2. That the building and operating of a railroad in a public street without legislative authority creates a nuisance.

3. That although such nuisance is indictable, this does not preclude private persons who are especially injured by it from proceeding against it, and any person who is specially injured by it may have an injunction to restrain it.

4. The property holders along a street in a town or city do suffer such special injury by obstructions which amount to a nuisance, in the streets contiguous to their property, that an injunction will issue at their suits to restrain such nuisance, whether they own the soil of the street or not.

5. That when the property holder along the street, also owns the soil in the street, the legislature can not authorize the use of such street by a rail road company, for the purposes of their road, until compensation has been made to the owners of the soil.

In support of the first and second propositions they cited, *Trustees of Presbyterian Society in Waterloo* v. *Auburn and Rochester Railroad Company,* 3 Hill 567; *Williams* v. *New York Central Railroad Company,* 2 Smith 97; *Davis* v. *The Mayor &c. of New York,* 4 Ker. 506; *Inhabitants of Springfield* v. *The Connecticut River Rail Road Company,* 4 Cush. 63; *Erie Rail Road Case,* 27 Penn. St. R. 355 365; in support of the third and fourth propositions, 2 Story's Eq.

Milburn et al. v. The City of Cedar Rapids, and The Chicago, Iowa and Nebraska Rairoad company.

Jur. §§ 920, 924, and particularly § 924 *a*; *Corning et al.* v. *Lowerre*, 6 John. Ch. 439; *Davis et al.* v. *The Mayor &c. of New York supra.* In the construction of the statutes under which the appellee claims the fee was conveyed to the public (Stat. 1839 p. 608, Code of 1851, § 637,) they cited *Haight* v. *The City of Keokuk*, 4 Iowa 199; *The City of Dubuque* v. *Maloney*, 9 Iowa 450.

*Smyth, Young & Smyth* for the appellees.

I. It appears from the complainant's petition that Carpenter's first addition to the City of Cedar Rapids, after being surveyed, platted and acknowledged, was recorded May 29th, 1854; and that Carpenter's second addition was recorded July 25th, 1855. Chap. 41 Code of 1851, provides (§ 637): "The acknowledging and recording of such plat is equivelant to a deed in fee simple of such portion of the land as is therein set apart for public use, or is dedicated to charitable, religious or educational purposes." See also § 647. The City of Cedar Rapids has been laid out since the 25th of January, 1839. An act of the first territorial legislature (1839) entitled "An act to provide for the recording of town plats," § 5, provides: "When the plat or map shall have been made out and certified, acknowledged and recorded, as required by this act, every donation or grant to the public or any individual, or individuals, religious society or societies, or to any corporation, or bodies politic, marked or noted, as such, on said map or plat, shall be deemed in law, and in equity, a sufficient conveyance to vest the fee simple of all such parcels of lands as are therein expressed, and shall be considered to all intents and purposes a general warranty against donor, or donors, grantee or grantees, for his, her or their use, for the uses and purposes therein named, expressed and intended to be for the streets, alleys, ways, commons or other *public uses* in any

town or city, or addition there, shall be held in the corporate name thereof, in trust to, and for the uses and purposes set forth, expressed or intended." Ter. Laws, 1839, p. 454. Same Act, Rev. Stat. 1843 p. 609.

The case of *The City of Dubuque* v. *Malony*, 9 Iowa, was not governed by these Statutes, or either of them, the City of Dubuque having been laid out under an act of Congress, approved July 2d, 1856, and an amendatory act thereto, approved March 3d, 1837.

In support of this position see Note to *Davaston* v. *Payne* 2 Smith's L. C. 186, (4th Am. ed.) where the authorties are collected. *Philadelphia and Trenton Railroad Company*, 2 Am. Railway cases 292; *Williams* v. *The New York Central Railroad Company*, 2 Smith 100; *Drake* v. *The Hudson River Railroad Company*, 7 Barb. 508; *The King* v. *Ward*, 4 Adolph. & Ellis 384.

II. The railroad company is authorized by law to construct its road along Jefferson street in the City of Cedar Rapids. Session Laws of 1853. Right of Way Acts § 8. Webster's Dict., 5th definition of the preposition " over."

LOWE, C. J.—This is an appeal from an order of the District Court refusing an allowance of an injunction to restrain the respondents from constructing a railroad along and upon Jefferson street, in the city of Cedar Rapids.

The application was based upon the following alleged facts; that the complainants are legal owners and tax payers, and some of them residents on lots fronting on said street; that said lots are situated in Carpenter's additions to the city of Cedar Rapids, surveyed, platted, acknowledged and recorded in the years 1854 and 1855, as the law requires. Among others, Jefferson street is dedicated as a highway upon the map of said additions. That the petitioners purchased in fee their lots from their co-complainant

Carpenter, by the description designated on the recorded map, and that they are all situated within the corporate limits of said city. That in November, 1856, the City Council of Cedar Rapids passed an ordinance granting the right of way to said railroad company through and across any of the streets of said city under certain restrictions, and for a named consideration. That under a written permit issued by the Mayor of said city, in pursuance of the ordinance aforesaid, the railroad company was proceeding to construct their road-bed on said street, by both digging excavations and raising embankments along the same, in order to bring the track of said road to an established grade, whereby the passage of footmen and teams would be obstructed, the use and convenience of the street as a highway would be impaired; that quantities of water would collect in places to the annoyance of the residents on said street. That the said company are about to lay down their iron rails upon said track, with the intention to use the same for the running of their cars along said street, which, with the noise, dust and confusion this will necessarily create, would greatly interfere with the free use of the same as a public easement.

Under these circumstances it was claimed:

*First.* That to construct and operate a railroad along said street, would be an undue interference with the proprietary rights of the complainants, who claimed the fee of the soil to the center of the street, unless the right of way had been obtained and compensation made in the mode proscribed by law—which had not been done.

*Second,* That the permission to do so by virtue of an ordinance passed by the corporate authorities of the city of Cedar Rapids, was ineffectual and nugatory, being a grant without authority of law.

*Third.* That such a use of a street in a city or town, is

inconsistent with the objects and purposes of its dedication, and therefore amounts to a nuisance.

These several grounds upon which the injunction was prayed in this case will be briefly considered in the light of our statute law, and of the authorities of other States, where the same questions have been elaborately and learnedly discussed and settled.

*First,* Is it true that where towns and cities in Iowa have been laid out in the manner required by our statutes, that the purchasers and proprietors of lots in the same hold the fee of the soil to the center of the streets on which said lots front. An affirmative answer cannot safely be given to this question, if the plain meaning of words is not to be disregarded.

The laying out of town sites in this State, and whilst it was a territory, has been and still is the subject of statutory regulation. It is understood that one and the oldest portions of the plat or site of the city of Cedar Rapids was laid out and recorded under an act of the legislature approved January 25th, 1839, the 5th section of which reads as follows: "When the plat or map should have been made out and certified, acknowledged and recorded as required by this State, every donation or grant to the public, or to any individual or individuals, religious society or societies, or to any corporation or body politic, marked or meted as such on said map or plat, shall be deemed in law and in equity, a sufficient conveyance to vest the *fee simple* of all such parcel or parcels of land, as are therein expressed, and shall be considered to all intents and purposes, a general warranty against such donor or donors, grantor or grantors, for his, her or their use, for the uses and purposes therein named, expressed and intended to be for the streets, alleys, ways, common or other public uses, in any town or city or addition thereto, shall be held in the corporate town thereof, in

trust to and for, the uses and purposes set forth, expressed or intended."

Doctor Carpenter's additions to the city of Cedar Rapids, where the complainants property is situated, were laid out and recorded, agreeably to the provisions of the Code of 1851, § 637 of which reads as follows: "The acknowledgment and recording of such plat is equivulent to a deed in fee simple of such portion of the land as is therein set apart for public use, or is dedicated to charatable, religious or educational purposes."

· We presume all will consent, that in one respect the legal effect of these statutes is substantially the same, and that they do, whenever the town site is surveyed, platted, acknowledged and recorded in the manner prescribed by law, wholly divest the proprietor of such town, of his legal estate in such portions of said land as are dedicated to the public use, so that it becomes out of his power afterwards, when he sells the lots upon his town site to transfer the fee in the public streets to his grantee. We will not suppose the absurdity that the fee simple in land can go in two distinct directions and be held adversely at the same time by different parties. A proposition so plain as this need not be sustained by authority, though we may remark in passing, that the Illinois courts have given the same construction to a similar statute. 11 Illinois, 554; 13 Ib. 50; 21 Ib. 516.

It is not true then that a purchaser of town property in this State takes a title in the fee of the same to the center of the street upon which it fronts; but the only interest which he possesses in or to the streets, is that which is common to the whole public—the right of way over them.

To the writer of this opinion there is another sufficient reason why this must be so. We all understand that the established inference of law is, that a conveyance of land bounded on a public highway or river, carries with it the fee to the center of such highway or river, provided that the gran-

tor at the time owned to the center, and there be no words or specific description to show a contrary intent.   But there is another rule just as familiar and as well settled, and that is, the competency of the parties to a conveyance of real estate to rebut this legal presumption, and to fix the extent of the grant by specific lines and boundaries, as for instance, if a road or stream is to be the boundary by the edge or side of the same, or by any other specific discription; and that where this is expressly done, the grantee can take nothing by implication beyond such discription.   Now this is precisely the nature and character of all alienations of town property in this State, with a few exceptions hereafter to be noticed.

The law reqires that an accurate map of the plat of the town shall be made, marking and describing the length and breadth of the lots as well as the breadth and courses of the streets and alleys.   This necessarily implies a diagram that shall delineate the lines and dimensions in feet of each separately.   These lots are further designated by numbers, and it is simply by these numbers that they are conveyed, as they are known to represnt the particular lot, with its specific boundary as delineated upon the map. Under such circumstances there is no room to indulge the presumption that the purchaser takes any more land than is contained within the defined lines of his lot.   And in truth he does not any more than the purchaser from the General Government can take fee of soil outside of the Congressional lines of survey of the particular tract purchased, whether the same run along the side of a highway, river or otherwise, for the plain reason that in both cases the purchaser takes under a specific description, with boundary lines definitely described and made of record.   It follows, in our judgment, that the complainants in this case have no rights of soil in Jefferson street in said city, which have or can be violated

by the construction of the railroad in question, and therefore cannot object to the progress of said work, till compensation is made for right of way.

But as this court held somewhat differently upon the first hearing of this cause, following perhaps, the ruling made in the cases of *Haight* v. *The City of Keokuk*, 4 Iowa, 199, and *The City of Dubuque* v. *Maloney*, 9 Ib., it is proper we should explain the circumstances under which those decisions were made, and why they should be regarded an exception to the principle involved in this class of cases.

The city of Keokuk is situated upon a tract of land granted by Congress to the half breeds of the Sacs and Fox tribes of Indians. It was owned jointly by a large number of shareholders. It was not laid off by them, but by certain commissioners appointed by the court to make partition of the same. In their report the commissioners used the following language in respect to the town lots generally, to-wit: "All the town lots included in the above share or plat, are bounded by the middle of the streets and alleys on which they are situated, and those on Water street include also the land in front of them to the Mississippi River." This report was approved and made the basis of a decree of partition among the several shareholders. · The principle decided in the case of *Haight* v. *The City of Keokuk, supra,* was that the lot owner on Water street held the fee of the soil in front of his property, to high water mark, subject to the easement of the public for the purpose of a highway and a wharf. The decision was right. But a clear distinction will be noticed between the facts of that, and the case now before us.

Then again, in the case of *The City of Dubuque* v. *Maloney, supra.* Moloney was a lot owner, and it became a question in the controversy, whether the fee to the center of the street in front of the lot, was in the plaintiff or in

the defendant.   The court held that it was in the latter, and the plaintiff's suit fell to the ground.   But it will be remembered that Dubuque, as well as several other towns in Iowa situated on the Mississippi river, was laid out whilst Iowa was still a part of the Wisconsin Territory, in the years of 1836 or 1837, under the authority of a special act of Congress, the provisions of which are very unlike that of our statutes.   (See a reprint of said act in the Code of 1851, page 535.)   We mention this fact only for the purpose of showing that there can be no necessary conflict between the ruling in the Dubuque case and the class of cases which we are now considering.

With this explanation of the circumstances under which the cities of Keokuk and Dubuque were laid out, as accounting for the reason why the proprietary rights of their respective citizens in the streets were held to extend to the center, or to high water mark, the inquiry may be pursued in relation to other towns and cities, laid out under the statutes, as to what becomes of the fee in the streets when it passes by operation of law, out of the proprietor, at the date of the recording of his town plat.

Upon this question the language of the statute is not explicit, yet guided by the rule which enjoins the giving of statutes a reasonable interpretation, we cannot but think it a sound inference to hold, that whilst the fee, *ex necessitate*, must rest for a time in obeyance, that, nevertheless, it vests in the corporation, whenever its organization as such is effected, for the use of the town or the public.

*First.*  This is the construction given to the Illinois statute from which ours was evidently derived.   And it is the dictate of common prudence at least, to adopt the interpretation which the local courts, where the law originated, have given to it.   See Illinois authorities cited, *supra.*

The second suggestion we have to make is, that the dedi-

cation of streets in a town is chiefly for the benefit of the future inhabitants thereof, hence there is a fitness, not to say propriety, in the corporation holding the fee in trust for them and the public generally. Besides the reasonableness of such a construction, it would be and is in harmony with the large powers given to all incorporated towns and cities over the use, management and control of their streets and alleys. Admitting the soundness of this interpretation, then the charge that the city council of Cedar Rapids, acted without the scope of the powers of the corporation, in granting the right to construct a rail-way over one of their streets, is without foundation. If the company is required to obtain permission at all, from whom more appropriately could it come, than the party invested not only with the legal estate in, but all control over, the general improvement and supervision of said streets.

But another question still remains for consideration, and that is, whether the railway proposed to be constructed over or upon Jefferson street, would not be a public nuisance. The affirmative of this question is urged upon the ground that a railway use of a street is wholly inconsistent with the purposes and objects of its original dedication; that it is a street monopoly, excluding all competition; that it tends to encumber the street and prevent the free and common use of the same on foot, on horse back, or with private carriages; and, finally, that no highway can be rightfully used for the purposes of a railway, unless the right to do so has been conferred in express terms by the legislature, which, it is claimed, has not been done in this case. All this is within the logic and language of the cases of *Davis* v. *The Mayor &c., of New York et al.*, 4 Kernan, 506, and *Williams* v. *The New York Central Railroad Company*, 2 Smith, 97; but not within the facts or the actual principle involved in these cases. They are referred to as perhaps

Milburn et al. v. The City of Cedar Rapids, and The Chicago, Iowa and Nebraska Railroad Company.

the strongest authorities in favor of complainants in this case; yet a brief explanation of the circumstances under which they were made will show not only their inapplicability, but that they lay down doctrine in support of the decision which we shall make in this case.

Take the first of the above named cases in 4th Kernan. It arose and was decided after the legislature of New York had passed an act expressly forbidding the municipal councils of cities to permit a rail-way commencing and ending in the city, to be established in any street or avenue without the consent of a majority in interest of the owners of property upon the street. Without procuring such consent from the property holders, the defendants obtained a permit from the corporate authorities of the city to lay down a rail-way track on Broadway, within said city, and upon the application of the plaintiff for an injunction the court held, that notwithstanding the fee of the streets was in the city, which also possessed the general power to regulate, alter, repair and control the same, yet that it was not competent for the city by its council, in the face of the above prohibitory act, and in the absence of any other legislative authority, to establish a rail-way running wholly within the city, and that if it assumed to do so, and the track was accordingly laid down and used, it would be a public nuisance, for reasons (among others) above assigned. But it was also held that if the city was vested with the authority from the legislature to establish or to license an association of persons the right to construct and maintain for a term of years a rail-way in one of the streets for the transportation of passengers, that that could not in law amount to a public nuisance. It might subject the inhabitants thereof to annoyance and even detriment, yet having been authorized by competent legal authority, it would be *damnum absque injuria.*

The General Assembly of New York has made a distinc-

tion (and its power to do so has been recognized by their courts,) between rail-ways confined to the streets of a city, and long lines passing through towns in the country and terminating in cities. For we perceive that express power was given to the municipal government of the city of New York, to license the location in the streets of the New York and Hudson River Railroads. The propriety of conferring such a right in relation to these roads and all similar improvements, will appear obvious, we suppose, from the fact that when lines of railway are located for the most part in the country, their intersection of highways, or their running upon or over the streets of a city, are merely an incident of the general design, and that the whole enterprise would be greatly embarrassed, if not indeed often defeated, unless some such power to run upon streets was vested somewhere.

And the question arises, whether the legislature of Iowa has not substantially conferred this power upon all railroad companies in this State. The 8th section of the law of 1853, page 58, entitled "an act granting to railroad companies the right of way," provides that "any railroad corporation may raise or lower any turnpike, plank road, or other way, for the purpose of having their railroad pass over or under the same," &c. The word "over" means undoubtedly at an elevation above, as opposed to "under;" but it is clearly not limited to this meaning in this section, but includes the idea of crossing highways on the surface thereof, and also running upon them lengthwise. The first definition given to the preposition "over," by Webster, is "across;" its fifth meaning is, "on the surface of;" its sixth definition is, "upon." And it is in the sense of these last two definitions that the legislature, in the 4th section of the same act referred to, used it; where it is enacted, that "if the owner of any real estate over which said railroad cor-

poration may desire to locate their road, shall refuse"&c. The words "across" and "upon" are employed in the New York statutes to confer the right to railroad companies to occupy the highways of that State with their railways, either crosswise or lengthwise, according as the topography of the country or other exegency might require, In the sense of our statute, the words "over" and "upon" are synonymous, and without giving it an unduly liberal construction, we can safely conclude that the legislature did mean by such language, to give to rail-way companies the privilege of running their tracks upon the highways in the country, and streets in the city; but not without obtaining in addition to this legislative authority, the right of way from the party or corporation holding the fee in such easements; for the reason that it has been held, that such an appropriation of a common highway is the imposition of an additional burden upon it, and is the taking of the property of the owner of the fee within the meaning of the constitutional provision, which prohibits such taking without compensation. 2 Smith 97; 3 Hill, 507.

Now the law making power of this State has thought proper, as we construe the statute, to give to railroad companies the right to construct their rail-ways upon the streets of cities; and they have invested the local governments of those cities, both with the fee of the soil of the streets and the exclusive control over the same; and if in the exercise of their proprietary rights and police regulations over the streets, they should determine that iron rails and their use are a legitimate street improvement, upon what ground can this court determine otherwise, or control their authority in this respect? We apprehend none, for the reason that both the company and the city have derived their rights and privileges in the premises from the sovereign power of the State, which cannot be supposed to authorize that which would amount to a nuisance.

In Illinois, Kentucky, New York and Pennsylvania, the General Assemblies of those States have done the same thing, and the courts held, in view of such enactments, that they could not interfere, to prevent the construction of railways, in or upon the streets of cities, where the legal title of the same was in the corporation, and they were authorized by competent legal authorities; that under such circumstances they could not be adjudged an obstruction or annoyance which should be declared a nuisance. See the following authorities: *Canal Trustees* v. *Haven*, 11 Illinois, 554; *Moses, et al.* v. *The Pittsburg & Fort Wayne Railroad Company;* 20 Ill., 516; *Lexington & Ohio Railway* v. *Applegate*, 8 Dana, 298; *Hamilton* v. *New York & Hudson Railway*, 9 Paige, 171; *Drake et al.* v. *Hudson River Railroad Company*, 7 Barb. 508; *Chapman* v. *The Albany & Schenectady Railroad Company*, 10 Barb., 360; *Hunter* v. *Long Island Railway*, 13 Ib. 646; *Whitmore* v. *Story*, 22 Ib. 414; 6 Wheaton, 25.

The leading idea or argument running through these authorities is, that the dedication of streets in a city to public use is without restriction, as it respects the right of way or mode of transit; that they are necessarily subjected to purposes far more extensive than common highways; that the very large control given to city governments, over their streets, carries with it the power of modifying, abridging and enlarging their use in the way that shall best subserve the interest and business of the city; that the laying down and operating a railway track over a part of a streets is not an unreasonable obstruction of its free use, nor incompatible with its original dedication, but rather a new and impoved method of using the same, germain to their principal object, as a passage-way, marking the progress of civilization in this age, and to which the genius of the law readily accommodates itself, as should also the genius and habits of the people.

Believing that the foregoing views are in accordance with the predominant judicial sentiment of this country, we are led to conclude that the court below did not err in refusing the injunction, and its order therefore is

Affirmed.