## The City of Des Moines v. Hall.

I. Per Lowe and Dillon, Ch. JJ., Wright and Beck, JJ., concurring.

1. Corporation, municipal: DEDICATION: STREETS AND ALLEYS.    A proprietor laying off an addition to an incorporated town or city cannot confer upon some other public corporation control over the streets and alleys.    It was accordingly *held,* where a proprietor caused land to be platted into blocks and lots, with streets and alleys, as an addition to a town, in conformity with chapter 41 of the Code of 1851, that an entry upon the plat that the streets and alleys marked thereon were conveyed to the county within which said town was situate was ineffectual to deprive the latter or confer upon the former any rights in or control over such streets and alleys.

2. —— ACCEPTANCE OF ADDITION.   The acceptance on the part of an incorporated town or city of an amended charter, which includes an

The City of Des Moines v. Hall.

addition previously laid off and platted, amounts to an acceptance of such addition and the streets and alleys therein.

3. —— EFFECT OF DEDICATION. The laying off and recording a town plat or of an addition thereto under said chapter 41 of the Code of 1851, had the effect to vest in the corporation the fee simple title to and exclusive right of dominion over the streets and alleys thus dedicated to the public use. In such case neither the original proprietor nor his grantees have the right to the subterraneous deposits of coal within the limits of such streets, and the corporation may maintain an action against him for coal mined and taken by him from beneath the same.

## II. Per Cole, J., dissenting.

4. —— STATUTE CONSTRUED : RIGHT OF ACTION. The term "fee simple title," as used in section 635 of the Code of 1851, should not be construed in the same sense as is usually given to it, and the city council cannot maintain an action for the value of coal mined by the proprietor or adjacent lot owner. But, if such mining operations have injured the streets or rendered them more expensive of improvement for any of the uses to which they may be applied, the city could recover for such injury.

## Appeal from Polk District.

### SATURDAY, APRIL 11.

In 1856, Edwin Hall, then in life (since deceased), and his wife, the defendant in this cause, were the legal owners of a tract of land adjoining the town of Fort Des Moines. A portion of this tract they laid off and dedicated as town property, making it Hall's addition to said town, now the city of Des Moines, by platting, acknowledging and recording the same, in all respects as the law directs, except, that, in a writing, indorsed or written on the map or plat, it is stated, that they convey the streets and alleys marked on said plat to *Polk county* for the use of the public.

Under this dedication, the plaintiff claims to have the absolute title and ownership of the streets and alleys

designated on the plat of said addition, and complains, that the defendant has mined and taken out from one or more of the streets in question, a large quantity of stone coal, the doing of which is a trespass against the rights of the plaintiff, and damages are claimed therefor.

The defense, special in its character, made, is, that the dedication of the street in the manner specified did not have the effect to divest the original proprietors of the right and title to the soil in said streets, but only gave to the public the use and control of the same for a highway and easement, which had not been interfered with, by the mining and excavating of the coal thereunder which the defendant had done, and therefore judgment for costs is prayed, etc. To this defense a demurrer was sustained, which is the ground for this appeal.

*Polk & Hubbel* for the appellant.

*Seward Smith* and *Phillips, Gatch & Phillips* for the appellee.

Lowe, Ch. J. — The laying off, platting and recording of town sites, and all subsequent additions thereto, are 1. CORPORATION matters of statutory regulations. When MUNICIPAL: dedication: done, it impresses the property with a new streets and alleys. character, dedicates it to new objects, subjects it to new burdens, and is known by a new description; it becomes, in other words, town or city property, in contradistinction to country property; it must, therefore, have the attributes and conditions which the law itself fixes upon it. The statement which in this case the proprietors make on the plat, that they conveyed the streets and alleys of their addition to the county of Polk, for the use of the public, can have no legal significance or effect. It is the plat, acknowledged and recorded, that conveys title under section 637 of the Code. So, in this case, it was

the survey, plat, acknowledgment, and recording of their addition, which determined, by operation of the statute, where the title of the streets vested, and a contrary statement on the plat, so unusual and out of place, and without any apparent reason to support it, cannot have the effect to change or repeal the regulations of the statute on the subject.

The acceptance of this addition, by the city, after the lapse of ten years, may well be presumed, no light proof of which is the act of bringing this suit.

But the chief point in controversy in this case goes to the question, whether the laying off and recording a town plat, or an addition thereto, has the effect, under the statute, to vest the absolute title of the streets in the corporate public; if so, the demurrer was well plead, otherwise it should have been overruled.

Hall's addition to the city of Des Moines was made under the provisions of the Code of 1851.

Section 637 reads as follows: " The acknowledgment and recording of such plat *is equivalent to a deed in fee simple of such portion of the land* as is therein set apart for public use, or is dedicated to charitable, religious or educational purposes."

Under this section, we suppose the public would get the same grade of title to the streets that charitable, religious or educational institutions would get to lots or grounds set apart to them.   They stand precisely in the same category.   It would be as unreasonable, as it is against the plainest meaning of the language in this section, to allow the proprietor of a town site, after recording a plat of the same, to go upon ground dedicated to charitable and religious purposes, and strip it of its timber, or of its coal, if perchance any should be found under the surface thereof.   No dedication of ground for such purposes has ever been understood to be coupled

with such annoyances from the dedicator.    To claim it, is a perversion of the true meaning and intent of the law.

And there is just as little reason to subject the dedication of streets to like interferences from the original proprietor.    If permitted, no one could tell how far it might subsequently affect the free and safe use of the street as a highway, or interfere with the grading, the construction of underground sewers, and other improvements.    And we are inclined to believe that it was the object of the legislature, in withholding the title of the streets from the lot owner, divesting the proprietor thereof, and placing it in the public, to give to the corporate authorities the fullest power and control over the same, which can arise from title, in order that all improvements of them as highways might be made without let or hindrance from any quarter.    At all events, it is always the better and safer course to interpret a statute according to the natural import of the language used.

Applying this rule of construction to the section of the Code to which reference has already been made, we cannot be at a loss to determine its meaning, and to hold that it does, for the designated purposes, vest the absolute title in the public.    As such, the defendant has no more right to mine and take out coal from one or more of the streets of her addition than any stranger, and the law will hold her equally amenable for the trespass.

And this conclusion is not without support from several decisions which we have heretofore made directly and indirectly, and is also sustained by authority from other States upon a similar statute. *Milburn* v. *City of Cedar Rapids*, 12 Iowa, 246 ; *McMahon* v. *Council Bluffs*, id. 268 ; *Hughes* v. *M. & M. R. R. Co.*, id. 261 ; *Canal Trustees* v. *Havens et al.*, 11 Ill. 554.

COLE, J., dissenting.

DILLON, Ch. J. — The foregoing opinion was filed in this case at the December Term, 1866, by the then chief justice.

Subsequently a petition for rehearing was presented and granted. Accordingly, the cause has been reargued. As the defendant's counsel claims that the former opinion does not notice or sufficiently answer all of the points presented by him, this will now be done so far as it is deemed to be necessary.

The action is brought by the city in its corporate capacity to recover damages for coal mined and taken by the defendant from beneath the surface of certain streets in Hall's addition to the town of Fort Des Moines, now the city of Des Moines.

The city claims, that, under the statute, it has the fee simple title to these streets, and that, having such a title, it may of right maintain this action against the original dedicator, or any other person who, without its authority, mines and takes coal therefrom.

The defendant denies, that, in fact, there was any *statutory dedication* of the streets in said addition.

If this point is ruled against her, she then claims, that, *in law*, such a·dedication does not give the city the right to the coal within the limits, but beneath the surface of the streets. In other words, she claims, that, notwithstanding such a dedication of the streets, the right to the coal or minerals therein or thereunder remains with the original donor or proprietor.

We first inquire whether the streets in Hall's addition were dedicated to the town, now city of Des Moines.

In 1856, Hall owned the land on which the addition was laid out. The land was (as alleged in the answer) *within the corporate limits* of the town of Fort Des Moines, but constituted no part of the original town plat. In the year last named (1856), Hall caused the land to

be surveyed and platted into blocks, subdivided into lots, with streets and alleys in the usual manner.

On the map or plat was written the following " For the consideration of the advancement of the price of real estate laid out into town lots, we, Edwin Hall and Sytha Jane Hall, the proprietors of the within described town plat, do hereby convey to *Polk county*, for the use of the public, the streets and alleys as marked on the within plat, and *dedicate the same to the public*."

" EDWIN HALL,<br>" SYTHA J. HALL.

" February 18, 1856."

This map or plat was made under or in pursuance of sections 632, 633 and 634 of the Code of 1851, then in force.

On the plat was an acknowledgment exactly in conformity with section 635 of the Code, viz. : " that the disposition of the lands as shown by the within *plat and map*, is with their free consent, and in accordance with their desire." No reference is made in the acknowledgment, to the instrument conveying the streets and alleys to Polk county.

The plat and acknowledgment were presented to the county judge as required by section 636, and he, as therein directed, entered an order that the same be recorded, which was done.

It was from the streets in this plat that the coal was taken for which this action is brought.

The next section (637) provides, that " The acknowledgment and recording of such plat is equivalent to a *deed in fee simple* of such portion of the land as is therein set apart for public use, or is dedicated to charitable, religious or educational purposes." If it were not for what is termed by counsel, the deed to Polk county, indorsed on

the plat, it is clear that here would, under the statute, be a complete dedication of the streets.

But defendant claims that it is *this deed* and not the plat, though the latter be acknowledged and recorded, that conveys the title, and that the title thus conveyed is to *Polk county*, and not to the town or city corporation. Therefore the right of action for the coal, if in either county or city, is in the former, and the plaintiff, the city, cannot recover.

The answer to this argument is, that, aside from the attempted conveyance to the county, the laying off, platting, acknowledgment and recording were in exact conformity with the statute, making a complete statutory dedication of the streets. This dedication would give the streets or the control thereof to the town or city corporation, and not to the county.

The rights thus given by this dedication are not taken away by the attempted conveyance (so called) to the county, because such conveyance was simply inoperative. It was inoperative, because a proprietor, laying off an addition to an incorporated town or city, cannot confer upon some other public corporation rights in and control over the streets and alleys, and such other corporation has no authority to accept a grant, foreign to its powers and duties. To recognize such a doctrine, would be to deprive the city or town of the usual and necessary control of its own streets, and to give this control to a foreign or extraneous corporation. These principles are well sustained by adjudged cases. *Jackson* v. *Hartwell*, 8 Johns. 422; id. 385; *Trustees, etc.*, v. *Peaslee*, 15 N. H. 317; *Morris* v. *Bowers*, Wright (Ohio), 157; *Sloan* v. *McConahay*, 4 Ohio, 157; *Hornbeck* v. *Westbrook*, 9 Johns. 73; *North Hempstead* v. *Hempstead*, 2 Wend. 109; *Coggeshall* v. *Pelton*, 7 Johns. Ch. 292.

This view is not in conflict with the right of a proprie-

tor in laying out a town or city or addition thereto, to grant simply the use of, or an easement in, the streets, or to reserve minerals therein, as was held in *The City of Dubuque* v. *Benson* (23 Iowa, 248).

It is next contended by the defendant, that there was no statutory dedication of Hall's addition, because the same was *never accepted* by the town or city. The acceptance of the addition, it is said, is as necessary to vest the fee in the city, as the making and recording of the plat (Code 1851, §§ 638, 642).

2. —— acceptance of addition.

The former opinion disposes of this point, by the remark, that " an acceptance, after the lapse of ten years, may well be presumed, no light proof of which is the act of bringing this suit."

But, without resting upon this ground, or this alone, we may observe, that, at the time Hall's addition was laid out, Fort Des Moines was acting under a special charter. This charter did not in terms require the assent of the town authorities to the plat or addition.

Afterward, by act of January 28, 1857 (Laws 1857, ch. 185, p. 281), the charter of the city of Des Moines was amended, and included this addition, with others, in the corporate limits. If not before a part of the city, it became such by virtue of this act, and the fee in the streets, and the control of the streets, passed to the city by operation of law. Could the *county* after this claim any right in or control over the streets of this addition? Surely not.

Could the city, after accepting this amended charter, be heard to say, that it was under no obligation or had no power to work or keep in repair the streets of an addition included within and made part of it? Clearly not.

If these views are correct, it follows, that there was a complete statutory dedication of the streets in Hall's

addition, and that the city of Des Moines holds the fee simple thereto, as provided by section 637, above quoted.

What we hold is, that accepting a charter, which included this addition in its limits, is an acceptance of the addition and the streets therein.

For the general doctrine as to the necessity of an *acceptance* by the local authorities, for what purpose such acceptance is necessary, and how it may be proved, see *State* v. *Wilson*, 42 Maine, 9; *State* v. *Bradbury*, 40 id. 154; *City of Oswego* v. *Canal Co.*, 2 Seld. 257; *Remington* v. *Millerd*, 1 R. I. 93; *State* v. *Carver*, 5 Strobh. 217; *Commonwealth* v. *Kelley*, 8 Gratt. (Va.) 632; *Bowman* v. *Boston*, 5 Cush. (Mass.) 1; *Hyden* v. *Jamaica*, 27 Vt. 443; *Hobbs* v. *Lowell*, 19 Pick. 405; *Commonwealth* v. *Belding*, 13 Metc. 10; *Hemphill* v. *Boston*, 8 Cush. 195; *Jennings* v. *Tisbury*, 5 Gray, 73; 7 id. 338; *State* v. *New Boston*, 11 N. H. 414; *People* v. *Jones*, 6 Mich. 176, 184; *Willoughby* v. *Jenks*, 20 Wend. 96; *Curtis* v. *Hoyt*, 19 Conn. 154.

It being thus settled that there is a perfect statutory dedication, the next question is, whether the right to sub-

3. —— effect of dedication. terraneous deposits of coal within the limits of the streets is in the city or in the original proprietor, it not appearing that such proprietor has aliened the adjacent lots? At common law, it will be conceded that the right to such coal would not be in the city; that the owner of the adjacent lot would own the soil to the middle of the street, subject to the easement of passage and the like in favor of the public. This was so held in *Dubuque* v. *Maloney* (9 Iowa, 450). Accordingly, in that case, it was decided that the city could not construct a cistern in the street without the consent of the adjoining lot owner.

But, where a town or an addition is laid out under the statute, it is different, as was held by this court in *Mil-*

The City of Des Moines v. Hall.

*burn* v. *Cedar Rapids*, etc. (12 Iowa, 246, 252), and *Huyhes* v. *R. R. Co.* (id. 261). It is there remarked, that "It is not true, then, that a purchaser of town property in this State takes a title in the fee of the same to the center of the street upon which it fronts; but the only interest which he possesses in or to the streets is that which is common to the whole public, the right of way over them." To which should, perhaps, be added the right of reverter in case the street should be vacated. And the donor or dedicator, if he retains the lots, has no greater rights in the streets than his grantee of the lots would have. Accordingly, under a statutory dedication, it would seem clear that the city could construct a cistern or sewer in the street without the consent of the adjoining lot owner.

It is claimed by the defendant that only the *surface* of the streets is set apart for the public. This we do not believe to be a true view of the statute. Cannot the city excavate and remove the surface? Who doubts it? If it meets, in so doing, with a valuable quarry of stone or gravel, may it not use or sell the stone or gravel? Why not? Can the adjacent owner claim the subterraneous stone or gravel and sand, on the ground that it does not interfere with the present use of the street? If he cannot, has he any better right to the coal? If the coal is his, may he, if he has never parted with his right to it, not claim it, and the right to mine it, though this should interfere with the work of actual municipal improvement? If the coal is his, his property, how can the city deprive him of it?

To recognize such a right in the adjoining owner, is to deprive the city of that full and ample control over the streets which it was the purpose of the statute to confer upon the municipal government.

It is argued that the city has no power to engage in

mining operations, and that to hold that it, and not the adjacent lot holder, owns the coal, is to tie up valuable mines so that no one can get the benefit of them.

It is true, that, without express or plain authority, a city could not buy or lease lands to carry on the business of mining. It cannot engage in quarrying and selling stone as an independent business. But if it needs stone for public improvements, it may lease, or perhaps buy, land containing stone, and quarry them. Clearly it may take them from its own streets.

If it has a coal mine under its streets, why, if it can do so profitably, may it not raise the coal and sell it, or allow others to do so, receiving rent or other compensa tion? We see no good reason. It being understood, of course, that the right of public and safe passage upon the street is not to be thereby obstructed or impaired.

By way of illustration, we may inquire whether the city might not maintain an action against the defendant, or against any adjoining lot owner, if he should, without the consent of the city, take from the streets any earth, stone, sand or gravel? If this material were taken from the surface of the street, none could doubt that the city might sue and recover the value of the material thus taken, or the damage thereby done.

Is it different if the material be taken from beneath the present level or grade of the street? It seems to us, not. Is a distinction to be taken between material of this character, and coal? May the adjoining lot owner take the one as of right, and be held a wrong-doer if he takes the other? Upon what principle can such a distinction rest?

The true view is, that, when land has been dedicated under the statute, without reservation, and the plat has been recorded and accepted in cases where an acceptance is necessary, the dedicator or his grantee has no special proprietary rights in the soil composing the streets, but

the dominion of the streets passes to the public authorities.

No other view gives effect to the strong language of the statute, that "the acknowledgment and recording of such a plat is equivalent to a deed *in fee simple*, of the portion of the land set apart for public use." It is plain from this language, that such a dedicator parts with all of his special property rights in the streets, just as effectually as does an ordinary grantor, with perhaps the exception of a right of reverter to him or his assignee, in case the street should be vacated. In support of this view, see *Trustees* v. *Haven*, 11 Ill. 554; *Hunter* v. *Middleton*, 13 id. 50; *Moses* v. *R. R. Co.*, 21 id. 516; *Seventeenth street*, 1 Wend. 262; *Clinton* v. *R. R. Co., infra*.

After such a dedication, he has no more right to interfere with the street than a stranger. If the city could maintain this action against a stranger, it can equally maintain it against the dedicator or his grantee.

And this view is clearly maintainable without holding, as the defendant supposes we must, that the city corporation may engage in the business of mining. But on this point, we need add nothing to what has been before said. Again, the defendant makes this argument: He asserts the undeniable proposition, that a city cannot alien or sell its public streets. He then says, if it cannot sell the whole street, it cannot sell part of it, that is the coal under it, and thus divert it from the purposes for which dedicated.

It is undoubtedly true, that the primary idea of a street is, for the purpose of a way, a place upon which the public have a right to pass. This right the city may not destroy or unreasonably abridge. It could not take coal from the streets, or authorize others to do so, if this should interfere with the paramount and dominant right of the public to the use of the street as a highway. But,

if, in subjection to this, the city can make a profitable use of the subjacent material of the street, why may it not do so ?

But it is enough in this case to hold, that, as against the adjoining lot owner or original dedicator, the city has full control over the whole street, and not simply over the surface, and that it can maintain an action against any person who, without its permission, removes any material from the body of the street, whether such material be superficial or subterraneous.

Allowing the city to use the coal in its streets, and prohibiting others from doing thus against the city's consent, is a very different thing from allowing a city to sell or dispose of its streets, or property, or franchises which it holds in trust for the public.

At common law, the dedication of land for streets was of the *use* simply. The statute changes this, makes the dedication extend to *soil*, and the soil includes, of course, the minerals therein. It is an inaccurate and mistaken use of the term *fee simple* to limit it to a mere *use*. It is a correct and proper use of the word to express the idea of the right or title to the *soil*.

Affirmed.

COLE, J. (dissenting). — I cannot concur in the last point ruled by the foregoing opinion. I agree in the ruling that the dedication is to the city of Des Moines, and that it has been accepted. But I do not think that the city of Des Moines acquired such an absolute title to the streets and alleys, as to entitle it to maintain an action for the value of coal mined thereunder, as against the dedicator.

4. —— statute construed: right of action.

The statute is, that "the acknowledgment and recording of such plat is equivalent to a deed in fee simple *of the portion of the land set apart for public use.*" It

is not claimed by my brothers, nor does the foregoing opinion decide, that the fee simple title acquired by the city is the same as that acquired by an ordinary grantee of a fee simple title. For instance, it is conceded in the foregoing opinion that the city could not sell the streets nor any part of them; and, in case there should be an abandonment by the city, the title would revert to the dedicator. And I suppose it is not claimed that the city has the right to occupy the streets for mining purposes, such as sinking a shaft, erecting a house over it, and machinery for raising the coal, or buildings for its storage and protection when raised. These conceded and evident limitations upon the title mentioned in the statute, as conveyed by the acknowledgment and recording of the plat, show that the true construction of the term, "fee simple title," is not the same as is usually given to it in cases of ordinary contract and grant. What then is the meaning of the statute? In my opinion it means, that, by the acknowledgment and recording of the plat, the city is invested with the absolute right to appropriate the streets and alleys to *any and all the purposes* for which streets and alleys are properly used by cities. For instance, it was held by this court in *The City of Dubuque* v. *Maloney* (9 Iowa, 450), that, under a dedication of a street, at the common law, the city acquired no interest in the soil or legal possession and no right to use the streets for the purpose of constructing a cistern, but only an easement comprehending merely the right of the public to pass and repass, and to do all acts necessary to keep it in repair. Now, under our statute, a different and much greater right passes to the city. It acquires the right for the public to pass and repass, not only, but it has the right to build cisterns, lay gas and water pipes, sewers, or, if need be, to construct subterraneous passways, or the like. In other words, it may do every thing which

any absolute fee simple owner could do, with only this limitation, to wit: the use must relate to the purposes for which the dedication was made.

If a market square is dedicated, or a lot for school purposes, they must be used for the purposes to which they are respectively dedicated. The city could not open and work a coal mine on them, for the reason that they were not dedicated for such use.

If, in the case of a street, it became necessary or expedient in the judgment of a city to grade down a hill or mound in the street, and in doing so a stone quarry should be found, the city would have the right to use the stone taken out; so of sand, clay, coal or the like.

I have not the opportunity to further enlarge, I can only state the substance of my view. I do not think the city entitled to recover from the defendant the value of the coal mined by him; but, if such mining operations have in any way injured the city, or may injure it, by rendering it more expensive to construct any of the improvements connected with any of the uses to which streets are or may be applied, the city may recover for such injury; or it might, under proper circumstances, enjoin the dedicator from prosecuting any mining or other operations which might thus prejudice it.