TOMLIN v. THE DUBUQUE, BELLEVUE & MISS. R. R. Co.

1. Riparian rights; MISSISSIPPI RIVER.    The Mississippi river is a navigable stream, and a riparian proprietor thereon owns the fee of the soil only to ordinary high-water mark.    The case of *McManus* v. *Carmichael*, 3 Iowa, 1, re-affirmed.

2. —— CONSTRUCTION OF RAILROAD: RIGHT OF RIPARIAN OWNER TO DAMAGES.  The owner of lands lying along such river has no private right in the waters thereof, or in the shore between high and low-water mark, and he cannot recover damages for being deprived of access to the stream by reason of the construction of a railroad along its banks between such marks.  BECK, J., dissenting.

*Appeal from Dubuque Circuit Court.*

WEDNESDAY, JULY 26.

THE plaintiff appealed to the Dubuque circuit court from an assessment by commissioners of damages, at $150, for the taking right of way for railroad purposes by defendant over certain described property.    Upon the trial plaintiff testified that he owned the premises in question, embracing about 1,200 acres, extending along the shore of the Mississippi river about ten miles, and from a mile to a mile and a half back from the river, and that they are principally woodlands, small patches only having been cleared.    That on his land, along the bank of the river below the bluff, is a bench, varying from one hundred to one hundred and fifty feet wide, upon which defendant's road is proposed to be built.    The bluff is steep, and about one hundred and fifty feet high the entire length of the premises, except where four or five ravines make down through it.

That about twenty-five feet of the river side of the right of way, as laid out by the company along this bench, the whole length of the land in question extends below ordi-

JUNE TERM, 1871. 107

Tomlin v. The Dubuque, Bellevue & Miss. R. R. Co.

nary high water, leaving seventy-five feet, including the road-bed of defendant's railroad, above high-water mark the whole length. That the whole tract of land is worth from $30 to $35 per acre, without the railroad; and with the railroad the whole tract will be damaged $5.00 per acre. That he used the land only to cut off wood, which he marketed in Galena, about four miles distant. That the construction of the road would cut him off from banking wood for that purpose, and that the chief item of damage going to make up the depreciation of $5.00 per acre was the difficulty of getting wood over the railroad to the river. Several other witnesses testified on behalf of plaintiff, that the construction of the proposed road would depreciate the value of the whole of plaintiff's land $4.00 or $5.00 per acre, and this depreciation would be caused by the difficulty of transporting wood and farm products from the railroad to the river. Defendant introduced several witnesses, who testified that the whole damage to plaintiff, by the taking of the right of way and construction of the railroad, including the value of the land taken, would not exceed $400 or $500.

The evidence being closed, the court refused to instruct the jury, at the instance of the defendant:

1st. "The Mississippi river, opposite the State of Iowa, is a navigable stream, and the owner of lands adjoining the same has no private right or property in the waters of the river, or in the shore between high and low-water mark, but the ownership of so much of the shore as is situated between ordinary high and low water belongs to the public, and is within the control of the State for public purposes; and it is competent for the State to authorize the construction of a railroad along such shore between high and low-water mark, so as not to interfere with the navigation of the stream; and, if the construction of such railroad necessarily cuts the adjoining owner off from all communication between his land and the river,

otherwise than across such railroad, he is not entitled to compensation therefor."

2d.  " If you believe from the evidence that the river edge of the right of way in question is located the whole length of plaintiff's land upon the shore between ordinary high and low-water mark, and that plaintiff is thereby cut off from all communication with the river, otherwise than across such road, he is not entitled to recover damages therefor."

The court gave a series of instructions embodying the doctrine that, while the riparian proprietor owns the fee only to high-water mark, yet if he be obstructed from free access to the river, by a high embankment of a railroad, between high and low-water marks, he would be entitled to the damages to his remaining land for ordinary use, by reason of such appropriation.    The jury found for plaintiff the sum of $1,500.

Defendant appeals, and assigns as error the several rulings of the court upon the instructions.

*Shubael P. Adam* for the appellant.

*W. Weigley & Son* for the appellee.

DAY, Ch. J.—I.  In the case of *McManus* v. *Carmichael*, 3 Iowa, 1, this court, after great research, extending

1. RIPARIAN    to a review of all the cases both in the State
RIGHTS: Mis-
sissippi river.   and Federal courts, in a well-considered opinion, announced as the law of this State, that the Mississippi river is a legally navigable stream, and that the common-law consequences of navigability attach to such legal navigability.

This doctrine was followed in the subsequent case of *Haight* v. *Keokuk*, 4 Iowa, 199.

One of the common-law consequences of navigability, as fully shown by *McManus* v. *Carmichael*, is that the

riparian proprietor owns the fee of the soil only to ordinary high-water mark, and that the proprietorship of the bed of the stream, below ordinary high water, is in the State for the use of the public. Appellee concedes that it is only upon a review of the former decisions of this court that he can expect a favorable result in this case, and hence we are asked to overrule *McManus* v. *Carmichael,* or at least to modify the holding so far as to extend the ownership of the riparian proprietor to low-water mark. A careful examination of this case, with the reasoning by which it is supported, convinces us that the conclusions there reached rest upon satisfactory and solid foundations, and induces us to adhere to it as a sound exposition of the interesting questions it involves.

II. This case does not involve the right of compensation for the land taken below ordinary high-water mark. The 2. CONSTRUC- court instructed the jury that the plaintiff did TION OF RAIL- ROAD : right of not own the fee in such land, and could not riparian owner to damages. recover its value. The question is, can the plaintiff recover damages for being deprived of access to a navigable river, by reason of the building of a railroad along its banks. In view of the concession of appellee, *that* a result favorable to him can be effected only through the overruling or modification of the cases before alluded to, we will content ourselves with a less elaborate consideration of this question than that which its importance might otherwise render proper. The doctrine deducible from adjudged cases is, that by the rules of the common law the owner of land along the shore of a navigable river is entitled to no right, either in its shores or waters, as an incident of his ownership, except the contingent ones of *alluvion* and *derelictum.* Hence he is not entitled to damages, for an improvement made along the banks of such river, by the authority of the State, the effect of which is to deprive him of free access to the stream. This question was directly passed upon in the case of *Gould* v.

*Hudson River R. R. Co.*, 6 N. Y. 543, which was an action of trespass, to recover of the railroad company damages sustained by plaintiff in consequence of the construction of the railroad between his farm and the channel of the Hudson river, between high and low-water mark. The court of appeals, affirming the decision of the supreme court, held: "That the owner of lands adjoining a navigable river in which the tide ebbs and flows has no private right or property in the waters of the river, or in the shore between high and low-water mark, and is therefore not entitled to compensation from a railroad company which constructs, in pursuance of a grant from the legislature, a railroad along the shore, between high and low-water mark, so as to cut off all communication between such land and the river otherwise than across the road." And that, "whatever rights the owner of the land in such cases has in the river, or in its shore below high-water mark, are public rights, which are under the control of the legislative power, and any loss sustained through the act of the legislature affecting them is *damnum absque injuria*." In the recent well-considered case of *Railroad* v. *Stevens*, in the court of errors and appeals of New Jersey, in which this question was involved, BEASLY, C. J., announcing the opinion of the court, after a full review of the subject, uses this language: "The result is, that there is no legal obstacle to a grant, by the legislature, to the defendants of that part of the property of the public, which lies in front of the lands of plaintiff, and which is below high-water mark. It may be true that by such an appropriation the plaintiff will sustain a greater inconvenience than will other citizens whose land does not run along this river. But the injury to all is in its essence and character the same, the difference being only in degree. All persons who have occasion to approach this river over that part of the bank occupied by the railroad of the defendants may, perhaps, experience some incon-

JUNE TERM, 1871. 111

Tomlin v. The Dubuque, Bellevue & Miss. R. R. Co.

venience from the interposition of such works; the rail-
road, therefore, is somewhat of an impediment to the
public rights of fishery and navigation. But no one, it is
presumed, will pretend that such impediment is on that
account illegal, if authorized by the legislative authority.
Nor can the plaintiff complain because a difficult access to
the water is a greater hardship to him, owing to the easy
use of the water in connection with his property in its
natural condition, than it is to those who live at a distance
from it." Am. Law Reg. for March, 1871, p. 166. These
decisions settle the questions involved in this case, ad-
versely to appellee, and in their conclusions we concur.

Reversed.

BECK, J., dissenting:

I cannot concur with my brothers in the conclusions of
the foregoing opinion. The grounds of my dissent I will
endeavor, without an attempt to support them at any
length by argument, to state briefly.

I do not find it necessary to examine the doctrine of
*McManus* v. *Carmichael*, or to doubt its entire correctness,
as the views I entertain and the conclusions at which I
arrive are not at all in conflict with that case. I am there-
fore prepared to admit that, in the case under consideration,
the plaintiff owns the fee of the land " only to ordinary
high-water mark, and that the proprietorship of the bed of
the stream below high water is in the State for the use of
the public." The railroad in question in this case being
about to be built between high and low water, along the
river, the question, in this view of the law and facts, pre-
sented for the determination of this court, is this: Is the
plaintiff entitled to recover from the railroad company,
the defendant in this case, compensation for the damages
he will sustain on account of the location of its road? No
question is made as to the form of the remedy by which
plaintiff seeks to recover; his right to recover at all is

denied. I shall, therefore, without questioning the remedy pursued in this case, consider only the right upon which it is based.

While I admit that the fee of the land between high and low water is in the State, I do not concede that the riparian owner has no right or interest therein, other than is held by him in common with the public. I maintain that he holds rights and interests therein that are the subjects of property, and of which he cannot be deprived without just compensation. It is admitted in the majority opinion that he holds the rights of *alluvion* and *derelictum*. They are not, however, as there denominated, contingent, but are absolute and certain. The enjoyment, or rather the benefits of these rights, may be contingent, but the rights themselves are certain and absolute and inseparable from the land of the riparian proprietor. But these are not the only rights which he holds as such proprietor. Under the laws of Iowa he is most unquestionably the owner of the right of ferry appurtenant to his land. It therefore appears, without further inquiry as to the riparian owner's rights, that he does possess those which are not held by the public generally and are not *rerum communium*. In them he has property of which he cannot be deprived by the State, except upon just compensation.

The doctrine of the majority opinion to the effect that the riparian owner has no higher, greater or other rights in the stream and the land between high and low water adjacent to his property than the public generally; that his rights thereto, is the *jus publicum*, when applied to riparian owners upon the Mississippi river, assumes immense importance, and is of the gravest concern to property of great value. To illustrate the effect of the doctrine, I will mention its operation upon one class of riparian owners. These are the proprietors of the saw-mills, which are to be found in every city and village of the

State situated upon this river. Their mills are built near the stream, but above high-water mark. The logs from which they manufacture lumber are brought in rafts upon the river, and great quantities of lumber are transported in the same manner away from these mills. Immense capital is invested in some of these mills. Many acres of land laying along the stream are necessarily used in prosecuting the business. Without free access to the river, these manufactories would become useless and the land comparatively valueless. The doctrine of the majority opinion will permit railroad corporations to locate their roads between high and low water, in front of these mills, and to erect high and impassable embankments and walls, thus utterly ruining the business and property of the riparian owners, who can recover not one cent as compensation for the damages they sustain. It seems to me that doctrines which lead to such stupendous injustice ought to be discarded. It will not do to say, in reply to objections founded upon such oppressive and unjust consequences, as it is said in one of the cases cited in the majority opinion, that this is a case of hardship incident to the construction of works of public improvement for which the law affords no relief. It is quite true that cases of hardship and misfortune do sometimes occur, wherein the law affords no remedy, but when such gross injustice and great wrong result directly from the application of rules recognized by the courts, it will be found that they want the support of legal principles and sound reason.

The illustration above given of the effect of the doctrine announced in the majority opinion aptly introduces the consideration of the main argument upon which I ground my conclusion in this case. It is not the only one which, I conceive, supports my views, but I am content to rely upon it alone.

The Mississippi river is a highway, made so by numerous acts of congress. See reference to such acts, and to

ordinances and treaties to the same effect in *McManus* v. *Carmichael*, 3 Iowa, 1. By the act of congress admitting Iowa into the Union, which is in the nature of a compact, and irrepealable by any act of the State government, this river is declared to be "a common highway, and forever free as well to the inhabitants of said State as well as to all other citizens of the United States." Act March 3, 1845, § 3. Rev. 1860, p 965.

The lands of plaintiff border upon this highway. He has an interest therein, and a right of free access thereto, common to all owners of lands abutting upon highways. He cannot be deprived of this right which is in the nature of property; certainly not without compensation, by the exercise of any power of the State. The State cannot authorize a corporation or an individual to dig a ditch or erect an embankment between the lots of a citizen and the public street, thereby depriving him of its use. If it be required for public purposes, and the power be exercised under the right of eminent domain, just compensation must be made for the right, the private property, so taken for public use. The interest of the lot owner in a street or public ground adjacent to his property is fully recognized by this court in *Cook et al.* v. *The City of Burlington*, 30 Iowa, 94. The writer of the foregoing opinion announced the decision in that case, and cited, in support thereof, *Street Railway* v. *Cummingsville*, 14 Ohio St. 546, aptly quoting therefrom the following language, which is most pertinent to the question I am now considering: "The lot owners have a peculiar interest in the street which neither the local nor general public can pretend to claim, a private right in the nature of an incorporeal hereditament legally attached to their contiguous grounds and the erections thereon, an incidental title to certain facilities assured to them by contract and by law, and without which their property would be comparatively of little value. This easement appendant to the lots, unlike any

right of one lot owner in the lot of another, is as much property as the lot itself." And it is well added, by that enlightened tribunal, " that, upon a doctrine so just and necessary, and resting upon foundations so solid and satisfactory, it can matter very little that our conclusions are not concurred in by the courts of some of our sister States." The language of the Ohio court in the above quotation so well and clearly expresses my views of the nature of the rights of owners of land adjacent to public highways that I need add nothing thereto. These views are not in conflict with *Milburn* v. *The City of Cedar Rapids*, 12 Iowa, 246. They are shown to harmonize with the doctrines of that case by Mr. Justice DAY in the opinion in *Cook et al.* v. *The City of Burlington*, *supra*. In the last-named case the following language is used: " It is apparent that the question before the court (in *Milburn* v. *The City of Cedar Rapids*) was in regard to the plaintiff's *ownership* of the soil of the street, and had no reference to his *easement* in, or right of *enjoyment* of, the same. Taken in connection with the subject to which it was applied, the language above quoted (to the effect that the lot owner does not own the fee of the land to the center of the street, and that his only interest in the street is the right of way over it) does not conflict with the views herein adopted. In that case, relief was denied the plaintiff upon the ground that the laying down and operating a railway track over a part of a street is not an unreasonable obstruction of the free use, nor incompatible with its original dedication. In this case, however, the bill alleges that the defendant intends to sell the reservation absolutely, which would constitute an entire diversion of it from the purposes for which it was originally reserved. We believe that both reason and authority sustains us in the view that the plaintiffs, by their purchase of these lots abutting this reservation, acquired such rights therein as will enable them to

enjoin a diversion of its uses and purposes foreign to, and inconsistent with, the objects of the grant."

It will be observed that the question before the court in *Milburn* v. *The City of Cedar Rapids*, was the right of the city to authorize the construction of a railway along a public street, and not the right of the lot owner to recover damages sustained by him on account of its construction.

I think it clearly appears that the owner of land adjacent to a highway has an interest and right therein which is recognized by the law as property of which he cannot be deprived under the authority of the State without compensation.

In *The City of Clinton* v. *The Cedar Rapids and Missouri River Railroad Co.*, 24 Iowa, 455, it is held by a majority of the court that a railway may be constructed upon the streets of a city without the consent of, or compensation to, the city. Mr. Justice COLE holding that the city is entitled to compensation for any damage occasioned to the street by the construction of the railway. The question of the right of owners of abutting lots to recover damages was not before the court in that case, neither was it, as just remarked, before the court in *Milburn* v. *The City of Cedar Rapids*.

While I admit the authority of railway companies to construct their roads upon the highways of the State, I maintain that they must render compensation for all property of individuals which is taken or destroyed by them in so doing. As we have seen the land owner has a private right in the nature of an incorporeal hereditament to the highway adjacent to his land, which is property, and cannot therefore be taken or destroyed without just compensation.

*Slatten,* v. *The Des Moines Valley R. Co.*, 29 Iowa, 148, is in conflict with these views. To the conclusions and reasoning of the opinion of the majority of the court in that case, I dissented, but was not permitted, on account of

the press of business before the court at that term, to prepare an opinion expressing my views.

I have considered this case as though the Mississippi river were a common highway and subject to the control of State legislation as all other highways. So regarding it, I am satisfied that the judgment of the circuit court should be affirmed upon the principles and reasoning I have above announced.

But I am not unmindful that there are grave questions as to the right of defendant under the authority of the State to so occupy any part of the river as to interfere with its free use as a highway by all citizens of the United States. As we have seen, this great river is, by many laws of the United States, declared to be a highway free to all citizens of the United States. By what authority can the State authorize a corporation to construct a railroad along its margin, within the high-water line, so that its free use to any citizen of the United States as a great highway is impaired or taken away? This question is not presented in this case, and it is not therefore considered.

In my opinion the judgment of the circuit court should be                                Affirmed.