## KUCHEMAN & HINKE v. THE C., C. & D. R'Y CO.

I. PER ADAMS, J., ROTHROCK, J., CONCURRING.

1. **Railroads:** RIGHT OF WAY: USE OF STREET. Where the fee of a street or highway is in the adjacent proprietor, he is entitled to recover damages from a railway company for its occupation of the street, and such damages are to be assessed like damages for the appropriation of right of way.

   *Argument 1.* The use of the land for a highway and its use for a railway have a different effect upon the property of the owner, the former enhancing and the latter diminishing its value.

   *Argument 2.* When the land is appropriated for a street, the owner is compensated only for that, and for no other use.

   *Argument 3.* The construction of a track and operation of a railway upon a street is an additional servitude upon the owner of the fee.

II. PER ADAMS, J., ROTHROCK AND BECK, JJ., CONCURRING.

2. ———: ———: MEASURE OF DAMAGES. The owner of the adjacent property is not limited in his recovery to the actual value of the land taken, but he may recover all such damages as result proximately from the use for which it is taken.

III. PER ADAMS, J., ROTHROCK, J., CONCURRING.

3. ———: ———: ———. He is limited, however, to the recovery of damages for the use of his own land, which extends only to the middle of the street, and is not entitled to recover for the entire depreciation in value of his property, caused by the location of a railway, half upon his own land and half upon that of the opposite owner.

IV. PER BECK, J.

4. ———: RIGHT OF WAY: USE OF STREET. The owner of adjacent property is entitled to recover damages from a railway company for its occupancy of the street with its track.

5. ———: DAMAGES. The abutting owner is entitled to recover for *all* the injury which he may have suffered by the construction of the railway in the street, notwithstanding but half of it may be upon his land while half of it is upon the land of the opposite owner.

V. PER DAY, CH. J., SEEVERS, J., CONCURRING.

6. ———: RIGHT OF WAY: USE OF STREET. When a railway is constructed upon the street of a city in a careful and proper manner, the owner of abutting property cannot recover consequential damages for the appropriation of the right of way, whether he owns the fee to the center of the street or not.

*Appeal from Jackson Circuit Court.*

SATURDAY, JUNE 16.

THE plaintiffs are the owners of lot 188, in the town of Bellevue. The defendant's railroad is located along the middle of Second Street, in front of said lot, and upon the grade of the street. On said lot is a two story stone building, occupied as a store. The town having been laid off under the act of Congress approved July 2d, 1836. The plaintiffs own the fee to the middle of the street. After the said railroad was constructed, they procured an assessment of damages by commissioners, duly appointed by the sheriff for that purpose. From that assessment the defendant appealed to the Circuit Court. A trial was had by jury, and judgment rendered for the plaintiffs. Defendant appeals to this court.

*S. P. Adams, D. A. Wynkoop,* and *Shiras, Van Duzee & Henderson,* for appellant.

*L. A. Ellis* and *J. W. Crocker,* for appellees.

ADAMS, J.—I. The defendant asked the court to give an instruction, which is in these words:

"Plaintiffs, by virtue of their ownership of said lot in question, are not entitled to recover in this proceeding for any damages by them sustained in consequence of the location of defendant's railroad upon any portion of the street opposite said lot."

1. RAILROADS: right of way: use of street.

This instruction the court refused to give, and the refusal is assigned as error.

The precise question raised in this case has never been decided by this court. The case of *Milburn et al. v. The City of Cedar Rapids et al.,* 12 Iowa, 246, cited by appellant, differs in two respects. First, the plaintiffs in that case did not own the fee in the street; second, they sought to perpetually enjoin the construction of the road. In *The City of Clinton v. C., R. & M. R. R.,* 24 Iowa, 455, it was held that the company had a right to construct its road through the streets

of the plaintiff city, without the city's consent, the fee being vested in the city in trust for the public. But in that case, Dillon, J., said: "As to a highway in the country, or a street in a city, where the fee is in the adjoining owner, I am not prepared to say that to lay a railroad down upon it is not an additional burden, for which such proprietor is entitled to additional compensation."

In *Slatten v. Des Moines Valley R. R. Co.*, 29 Iowa, 148, the plaintiff did not own the fee in the street. The same may be said of the case of *Ingraham, Kenedy & Day v. C., D. & M. R. R. Co.*, 38 Iowa, 669.

It is held in those cases that a railroad company may construct its road along the street of a city, if authorized by the legislature or city. But it is not held that the company may do so without compensating the owners of abutting property if they own the fee in the street.

Whether compensation should be made in such case to the owners of abutting property, is a question upon which there is some conflict in the decisions. We are of the opinion, however, that upon a careful examination the conflict will be found less serious than it might at first be regarded.

The case of *Porter v. North Mo. R. R. Co.*, 33 Mo., 128, is cited by appellant as holding the precise doctrine upon which it relies.

The plaintiff, as the owner of a lot abutting on a street along which the defendant's railroad had been constructed, sought to recover of the defendant damages for the depreciation of the lots, caused by the occupancy of the street by the railroad.

The court said: "We think that the use of the street for purposes of a railroad, in its ordinary use as a means of travel and transportation, is not a perversion of the highway from its original purposes." It was accordingly held that any damage to the property abutting on the street, resulting from such obstruction, is *damnum absque injuria*. The counsel for the defendant claimed that the plaintiff was not the owner of the street. To this claim the court made no reference. We are left in doubt, therefore, as to how the fact was re-

garded; but perhaps we ought to assume that it was deemed immaterial. The various decisions are not collated, and the case cannot be regarded as thoroughly considered.

The appellant cites *Morris & Essex R. R. Co. v. The City of Newark*, 2 Stockton (N. J.), 352. In that case the court said: "The easement of the highway is in the public, although the fee is technically in the adjacent owner. It is the easement only which is appropriated, and no right or title of the owner is interfered with." This is an ingenious statement of the precise doctrine for which the appellant contends. But it must be observed that in that case the plaintiff had been authorized by the legislature to construct its road upon the street. After the road had been constructed and used for sixteen years, the city undertook to take up the track, and the plaintiff sought to enjoin it. The issue in that case was as to the validity of the act of the legislature. The rights of adjacent property-owners were not drawn directly in question. Besides, what the court said in regard to such rights was based upon *Williams v. The New York Central R. R. Co.*, 18 Barb. Sup. Ct. R., 222, which case was reversed in 16 N. Y., 97, and has become a leading case in support of the contrary doctrine.

The appellant cites *Moses v. P., Ft. W. & C. R. R. Co.*, 21 Ill., 516, but in that case the fee of the street was not in the adjacent owner. The rule in Illinois is that where the fee in the street is in the adjacent owner he must be compensated. *Indianapolis & C. R. R. Co. v. Hartley*, 67 Ill., 439.

It is claimed by the appellant that the rule for which it contends is held by the Supreme Court of Ohio, but our attention has been called to no case in which the precise question with which we are concerned has been drawn in issue.

In Pennsylvania the fee of the street is not in the adjacent owner. The decisions in that state are not in point.

The ruling of the court in *Lexington & Ohio R. R. Co. v. Applegate*, 8 Dana, 289, was based upon the assumption that the fee was not in the adjacent owner.

The appellants cite the case of *Barney v. The City of Keokuk et al.*, decided by the Supreme Court of the United

States at the October term, 1876. The action was in eject-
ment, brought to test the right of certain railroad companies
to maintain and operate their tracks upon a certain street in
which the plaintiff owned the fee. The court held that such
right could not be denied. BRADLEY, J., in delivering the
opinion of the court, said, in speaking of the Right of Way
Act of this state: "By the construction given to this act by
the Supreme Court of this state, railroads, especially when
located and constructed under municipal regulation and con-
trol, are not regarded as obstructions to the highway in a legal
sense, nor as creating, when laid thereon, any injury to the
proprietors of the adjacent lands for which they are entitled
to compensation." Several authorities are cited as sustaining
that view. But the authorities do not go to the length that
the court assumed. They may, as we have seen, be regarded
as establishing the doctrine that a railroad constructed on the
grade of a street or highway is not an obstruction in such
sense as to constitute a nuisance, but in no case has it been
decided that the owners of adjacent lots who own, also, the
fee in the street, are not entitled to compensation. A railroad
company, if authorized by the city or legislature, may have
the right to maintain its track upon a street of the city, and
the adjacent proprietor may be entitled to compensation at
the same time.

Our attention is called to certain language used in the
opinion in the case of *Barney v. Keokuk et al.*, above cited.
It is said, in substance, that it makes no difference whether
the fee is in the adjacent proprietor or not. In that case it
was undoubtedly true, but where damages are sought under
the Right of Way Act, it is not true, as we have endeavored
to show. We see nothing, then, in the point decided in *Bar-
ney v. Keokuk et al.*, inconsistent with the doctrine contended
for by the appellees in this case.

What are the authorities which hold that the adjacent own-
er must be compensated where he owns the fee in the street?

We have already referred to *Williams v. N. Y. Central
R. R. Co.*, as a leading case. The reasoning of the learned
judge who announced the opinion of the court in that case is,

to our mind, unanswerable. He says: "The right of the public in a highway is an easement, and one that is vested in the whole public. Is not the right of a railroad company, if it has the right to construct its track upon the road, also an easement? This cannot be denied, nor that the latter easement is enjoyed, not by the public at large, but by a corporation; because it will not be pretended that every man would have a right to go and lay down his timbers and his iron rails and make a railroad upon a highway. Here there are two easements: one vested in the public and the other in the railroad company. * * * Any one can see that to convert a common highway, running over a man's land, into a railroad, is to impose an additional burden upon the land, and greatly impair its value. As no compensation has, in this case, been made to the owner, his consent must in some way be shown. The argument is, that as he has consented to the laying out of the highway upon his land, therefore, he has consented to the building of a railroad upon it, although one of these benefits his land, renders access to it easy, and enhances its price, while the other makes access to it both difficult and dangerous, and renders it comparatively valueless. Were the transaction between two individuals, every one would see at once the injustice of the conclusion attempted to be drawn. It is the public interest supposed to be involved which begets the difficulty, and it is just for this reason that the constitution interferes, and provides that private property shall not be taken for public use without compensation."

In *Imlay v. Union Branch R. R. Co.*, 26 Conn., 249, the court said: "No one can fail to see that the terms 'railway' and 'highway' are not convertible, or that the two uses, practically considered, although analogous, are not identical. * * * They are by no means the same thing to the proprietor whose land is taken. On the contrary, they suggest widely different standards of compensation."

In *Ford v. Railroad Co.*, 14 Wis., 616, DIXON, CH. J., speaking of the two uses, said: "The dedication to the public as a highway enhances the value of the lot, and renders it more convenient and useful to the owner. The use by the

railroad company diminishes its. value, and renders it inconvenient and comparatively useless. It would be a most unjust and oppressive rule which would deny the owner compensation under such circumstances."

The same doctrine is held in *Pomeroy v. Chicago & M. R. R. Co.*, 16 Wis., 640; *Wager v. Troy Union R. R. Co.*, 25 N. Y., 532; *Inhabitants of Springfield v. Conn. River R. R. Co.*, 4 Cushing, 71; *Craig v. Rochester City & Brighton R. R. Co.*, 39 N. Y., 404; *Trustees of Presbyterian Society v. Auburn R. R. Co.*, 3 Hill, 567; *Schurmeier v. St. Paul R. R. Co.*, 10 Minn., 82; and *Southern Pacific R. R. Co. v. Reed*, 41 Cal., 256.

In Cooley on Constitutional Limitations, 549, the author, after collecting the various authorities, says: "The weight of judicial authority is against the power of the legislature to appropriate a common highway to the purposes of a railroad, unless at the same time provision is made for compensation to the owner of the fee." In Redfield on Railways, 1 Vol., 311, note, the author says, after stating the English rule (which is to give the owner of the fee in the street compensation): "The general current of American law upon this subject may now be regarded as the same as the English rule already stated." Dillon, in his Municipal Corporations, says in Sec. 576: "The weight of judicial authority at present undoubtedly is that where the public have only an easement in the street, and the fee is retained by the adjacent owner, the legislature cannot, under the constitutional guaranty of private property, authorize a steam railroad to be constructed thereon, against the will of the adjoining owner, without compensation to him."

To the weight of judicial authority in favor of such rule, as estimated by Judge Dillon, there have recently been added two cases above cited, *Indianapolis & C. R. R. Co. v. Hartley*, and *Southern Pacific R. R. Co. v. Reed.*

But it is urged by the appellant that this court, while it has not decided the precise question in issue, has used language which, carried to its logical results, would support the doctrine contended for. In the Milburn case, CH. J.

Lowe, after citing a number of authorities which held that the courts cannot interfere to prevent the construction of railways upon the streets of a city where the legal title to the same is in the corporation, says: "The leading idea or argument running through the authorities is, * * * * that the laying down and operating a railway track over a part of a street is not an unreasonable obstruction of its free use, nor incompatible with its original dedication, but, rather, a new and improved method of using the same germane to their principal object as a passage way." This, however, was said for the purpose of showing that the railroad could not be declared a nuisance. That was the issue in that case. On no other ground could the injunction sought be maintained. To justify the court in declaring the railroad a nuisance, it was necessary that it should appear to be an unreasonable obstruction, and incompatible with its original dedication. If it was constructed upon an embankment, so as to exclude public travel, it would be so, and any person suffering special injury might maintain an action without owning the fee in the part of the street which is obstructed. *Park v. C. & S. W. R. R. Co.*, 43 Iowa, 636. But the distinction between such an unreasonable obstruction as will constitute a nuisance, and give any person a right of action who is specially injured, and an additional servitude, growing out of a new but reasonable use, is manifest. We have seen no decision in conflict with the Milburn case, with the exception, perhaps, of *Davis v. Mayor, &c., of N. Y.*, 4 Kernan, 506. On the other hand, the doctrine of it is supported by a long line of adjudications.

In *Slatten v. Des Moines Valley Railroad Company*, it was held that the embankment, constructed as an approach to the bridge, was authorized by implication by the city council, and as the council had power to change the grade of the street without liability to the plaintiff, she could not recover. It will be seen at once that, under the circumstances of the case, the embankment could not be declared a nuisance. On the other hand as plaintiff did not own the fee in the street, she

could not recover on the ground that her land was taken for public use.

In England it appears that a right of action is given by statute to any person who is injured by the construction and operation of a railroad, even though the person's land is not appropriated. But it cannot be said that such right of action exists at common law, however great the injury, if the road is so constructed and operated that it cannot be declared a nuisance. *Hatch v. Vt. Central Railroad Company*, 25 Vt., 49.

In the case at bar the plaintiffs seek to recover under the right of way act. To enable them to do so it must appear that the defendant has taken, and holds, the plaintiff's real estate. The defendant's theory is that it has not done so. Its claim may be stated in the words of the court, in *Morris & Essex R. R. Co. v. The City of Newark*, above cited:

"It is the easement only which is appropriated, and no right or title of the owner interfered with." It is true, of course, that it is an easement only which is appropriated, but whether it is *the* easement only to which the land was already subject, is the question in the case. We are of the opinion that it is an additional easement. Where land is taken for a street or highway, and damages are allowed, should they be estimated upon the supposition that the street or highway will be used for a railroad? Certainly not, for two reasons: Not one street in a hundred is or ever will be so used, and it would be improper to allow the land owner for damages which he probably will never sustain. Again, if it were certain that he would sustain such damages, the railroad company and no one else should pay them. Upon no principle of law can it be presumed that a person whose land has been taken for a street or highway, has been paid for the easement which a railroad company enjoys in a street or highway upon which it constructs and operates its track. Upon what ground then can the land owner's right of recovery be denied? Can it be denied on the ground of necessity of reducing the cost of the railroad, because it is a great and desirable improvement? No one would claim that. Yet it is to be apprehended that the importance of railroads in the improvement of the country

has been regarded as such that courts have sometimes been unconsciously influenced to deny, what must appear to every mind as true as an abstract proposition, that the construction and operation of a railway track upon a street or highway is an additional servitude. A part of the difficulty no doubt has grown out of the doctrine in *Hatch v. Vt. Central R. R. Co.*, above cited, and the other cases which hold that no recovery can be had however great the injury, if no part of the injured person's premises have been taken, and the cause of the injury does not constitute a nuisance. The rule as held in those cases is undoubtedly the law, although its operation sometimes produces a great hardship. Of such hardship the case of *Slatten v. Des Moines Valley R. R. Co.*, is a striking illustration. REDFIELD, CH. J., who delivered the opinion of the court in *Hatch v. Vt. Central R. R. Co.*, seems to regret the operation of the rule in that case. He says:

" It is not always easy to impose upon these companies the obligation to do in all cases what simple justice requires, and those who suffer essential, and sometimes perhaps ruinous, injuries must be content to take the law as it is." He further suggests that perhaps the law should be changed by statute. To such change there would doubtless be an objection, on account of the indefinite liability to which railroad companies would be exposed. But such objection does not apply, where, as in the case at bar, the injured party is the owner of the soil upon which the railroad company's track rests.

We are of the opinion that the Circuit Court did not err in refusing the instruction asked by defendant.

II. The court gave the following instruction, the giving of which is assigned as error: " In determining the depreciated value of said premises by reason of the location and construction of said railroad over and in front of said premises, it will be proper for you to consider the evidence relating to the value of the premises immediately before and after the construction of said railroad, the condition and use of said premises before the construction of the railroad, and the effect upon said premises and their use by reason of the construction of the railroad; and you may also consider

*2. ——: ——:*
*measure of*
*damages.*

any and all other matters and circumstances as shown by the evidence tending to show the effect upon the value of said property by the location and construction of the railroad."

The evidence tended to show that damage resulted to the plaintiff's building by jarring caused by the operation of the road, and also that plaintiff's trade was diverted. It is claimed by the appellant that such damage is consequential and therefore not recoverable.

By statute the land owner is entitled to recover for such damages as he may "sustain by the appropriation of his land for the use of the railroad corporation." We are of the opinion that the damages are not limited to the value of the land taken, but include such damages as result proximately from the use for which it is taken. In *Henry v. Dubuque & Pacific R. R. Co.*, 2 Iowa, 309, the court say: "The true mode of applying this measure (of damages) is to determine the fair marketable value of the premises before the right is set apart, and then again after; and the difference will be the true measure of damages." In the same case the court say in substance that the assessment is not to be made with reference to any probable abuse of the privilege granted to the company, for the company only bargains for the legitimate use, and if it goes beyond that it will render itself liable when the act is done. Here is at least a clear implication that the assessment is to be made for such damages as will proximately result from the legitimate use of the right of way.

In *Imlay v. Union Branch R. R. Co.*, above cited, the court say: "Under the general statute in regard to railroads which provides that railroad companies shall pay all damages caused by laying out and making their road, the incidental injury to land adjacent to that taken and belonging to the same proprietor is to be considered in assessing damages." In *Evansville & Crawfordsville R. R. Co. v. Dick*, 9 Ind., 433, the court say: "The legislature cannot authorize either a direct or consequent injury to property without compensation to the owner." See, also, *First Church of Boston v. City of Boston*, 14 Gray, 214.

In instructing the jury, therefore, that they might consider

Kucheman & Hinke v. The C., C. & D. R'y Co.

any and all matters and circumstances as shown by the evidence tending to show the effect upon the value of said property by the location and construction of said railroad we do not think that the Circuit Court erred upon the ground that the evidence showed damages which were consequential.

We are of the opinion, however, that the instruction is objectionable upon other grounds. It contains this language: 3. —— : ——: "In determining the depreciated value of said —— premises by reason of the location and construction of said railroad over *and in front of* said premises, etc." The track is in the middle of the street. One rail rests upon that half of the street in which the plaintiffs do not own the fee. They can recover only for the appropriation and use of their land. The instruction allows a recovery for the appropriation and use of land not theirs.

There is great difficulty in separating the damages for which a recovery is allowable from those for which it is not, yet such a separation must be made. If the whole damages sustained by plaintiffs are $1,200, as the jury found, the plaintiffs can recover only that part thereof which arises from the occupancy of their side of the street. We can lay down no rule for its ascertainment which we think would be of any practical benefit. The damages recoverable are somewhat more than one-half of the whole damages suffered, because the plaintiffs suffer somewhat more from the occupancy of their side of the street than from the occupancy of the other. With this thought in mind the jury must allow such portion of the entire damages as to them seems right.

REVERSED.

BECK, J., *dissenting.*—I cannot concur in the conclusion announced in the foregoing opinion, that the judgment of the 4. ——: right Circuit Court must be reversed. I am unable to of way: use of street. assent to all the arguments advanced to support the first point of the opinion of Mr. Justice ADAMS, while I concur in his conclusion that the instruction was properly refused. To the conclusion of the last point of his opinion I dissent. I will briefly present my views of the case.

I.  It is true that this court has adopted the rule that when the fee of the street is not in the owner of the abutting lot, he cannot recover damages accruing on account of the construction of a railroad in the street. *Slatten v. The D. V. R'y Co.*, 29 Iowa, 148; *Tomlin v. The Dubuque, Bellevue & Miss. R'y Co.*, 32 Iowa, 106. In these cases I dissented from the conclusions of the majority of the court. I have had no occasion to change my views upon the subject.

It is quite clear that this court has not decided the question involving the right of the lot owner, in case the fee of the street remains in him. *City of Clinton v. C. R. & M. R'y Co.*, 24 Iowa, 455; *Ingraham, Kenedy & Day v. Chicago Dubuque & Minn. R'y Co.*, 34 Iowa, 249 (256).

In my judgment the right of recovery does not depend upon the circumstance of the fee being in the lot owner. See my views expressed in *Tomlin v. The D. B. & M. R'y Co.*, 32 Iowa, 106. I base plaintiff's right to recover upon his peculiar interest in the street which is property. If that property be injured, if the holder be deprived of its full enjoyment, he must be compensated. Whatever may be said by judges and lawyers to the effect that the occupation of a street by a railroad is but the use of the easement by the public, the position is overthrown by the common experience and observation of all who have witnessed the effect of the occupation of a street by a railroad. The easement of a railroad is a very different thing from the easement of public travel upon a village or city street. As the lot owner has never been compensated for the use of the street by the railroad, and as he acquired his property when no such easement existed, he ought to be compensated therefor. While I concur in the conclusion of the foregoing opinion upon the first point, I would base it upon the views just expressed. They are not without the support of respectable authority. See *Street Railway v. Cummingville*, 14 Ohio St., 546.

II.  I concur in the first part of point II of Mr. Justice ADAMS' opinion. The difference in the value of the premises, immediately before and after the construction of the railroad, is the criterion by which the damage is to be determined. The value may be diminished by direct injury to the building or by

injuries affecting its use. The value of a building may depend upon its use. If the construction of the railroad drove away trade, prevented travel upon the street, etc., its use would thereby be affected. *Park v. C. & S. W. R'y Co.*, 43 Iowa, 636.

The last part of the second point of the same opinion I cannot approve. It is too nice, too theoretical for practical application. It raises an objection which does not in fact exist, and fails to give a satisfactory answer thereto. It imagines a disease and provides no cure for it.

5. ——: damages.

The railroad cannot be built with one rail—the two are necessary in its construction. It is a *unity* composed of the two rails, the ties, the ground it occupies, etc. Now, this *unity* injures plaintiffs' property. The injury is not from the rail on plaintiffs' land, but from the entire road regarded as one thing. Plaintiffs may recover, in the view of Mr. Justice ADAMS' opinion, because the road is *partly* on their land. The road as a *unity* injures plaintiffs' property. The rail on their land is not the cause of the injury. They ought to recover for all the injury sustained on account of the road. But the rule of the opinion prevents recovery for the full amount of damages they have sustained. It is in conflict with the fundamental rule which secures the recovery of damages which will fully compensate the injuries sustained.

It will be understood, of course, that I dissent *in toto* from the conclusions and arguments of the opinion of the other justices filed in this case. In my opinion the judgment of the court below ought to be affirmed.

DAY, CH. J., *dissenting.*—I do not concur in the doctrine that a lot owner may recover damages for the occupation by a railroad, in a careful and prudent manner, of an adjacent street in a city. I have time and opportunity to express my views only in a very brief manner. It has been held in this State, that under the general right of way statutes, railroads have a right to pass over the streets of a city. *Milburn et al. v. The City of Cedar Rapids et al.*, 12 Iowa, 246. In *City of Clinton v. The Cedar Rapids*

6. ——: right of way: use of street.

& Mo. River Railroad Company, 24 Iowa, 455, it was held that, where the fee of the streets in a city is vested in the corporation in trust for the public, the legislature may authorize them to be used by a railroad company in the construction of its road, without the consent of the city and without compensation. See, also, The Chicago, Newton & Southwestern Railway Co. v. The Mayor and Trustees of the town of Newton, 36 Iowa, 299; The City of Clinton v. The Clinton & Lyons Horse Railway Co., 37 Iowa, 61; Ingraham, Kenedy & Day v. The C. D. & M. R. R. Co., 34 Iowa, 249.

It is also now the recognized doctrine in this State, that where a railroad is constructed over a street in a city, in a careful and proper manner, the owner of an abutting lot, who does not own the fee in the street, cannot recover damages for the consequential injury which he may sustain from the appropriation of the right of way. Slatten v. Des Moines Valley Railroad Company, 29 Iowa, 148; The City of Davenport v. Stevenson, 34 Iowa, 225. This doctrine has also been recognized and sustained by the most cogent reasoning by the courts of several other States: See Snyder v. The Pennsylvania Railroad Company, 55 Pa. St., 340; The Cleveland & Pittsburg Railroad Co. v. Spur, 56 Pa. St., 325; Case of The Philadelphia & Trenton Railroad Company, 6 Wharton, 25; The City of Philadelphia v. The Empire Passenger Railway Co., 3 Brewster, 547; Faust et al. v. The Passenger Railway Co., 3 Philadelphia Rep., 164; Moses et al. v. The Pittsburg, Fort Wayne & Chicago Railway Co., 21 Illinois, 516; Louisville & Frankfort Railway Co. v. Brown, 17 B. Monroe, 763; Hatch v. Vermont Central Railroad Co., 25 Vt., 49.

I am unable to see that the ownership of the fee to the center of the street can make any difference upon the right of the owner of an abutting lot to be compensated for the use of the street by a railroad. In such case the adjoining proprietor owns the mere naked fee subject to the public easement. In the case of The Philadelphia & Trenton Railroad Company, 6 Wharton, 25 (45), the Supreme Court of Pennsylvania employ this language:

" What then is the interest of an individual inhabitant as a subject of compensation under the constitutional injunction, that private property be not taken by a corporation for public use? Even agreeing that his ground extends to the middle of the street, the public have a right of way over it. Neither the part used for the street nor the part occupied by himself is taken from him; and as it was dedicated to public use without restriction he is not within the benefit of the constitutional prohibition, which extends not to matter of mere annoyance. The injury of which he can complain is not direct but consequential. It consists either in an obstruction of his right of passage, which is personal, or in a depreciation of his property by decreasing his enjoyment of it; but no part of it is taken from him and acquired by the company." The same doctrine was recognized in *Snyder v. The Pennsylvania Railroad Co., supra,* in which it was held that a lot owner was not entitled to damages for the occupation of a street by a railroad, although he owned the fee to the middle of the street. The case of *Morris & Essex Railroad Co. v. The City of Newark,* 2 Stockton's Chancery, 352, recognizes the same doctrine. In this case it is said:

" It follows that where a public highway is used by a railroad company in common with the public, under the sanction of the legislative authority, it may enjoy such use without making compensation to the owners in fee of the adjacent lands, and that the legislature may authorize such use without providing compensation, even under the existing constitution of the state, which provides that individuals or private corporations shall not be authorized to take private property for public use without just compensation first made to the owners. The authority to use a public highway for the purpose of a railroad, retaining the use of such highway for all ordinary purposes, subject only to the inconvenience of the railroad, is not such *taking* of private property from the owner of the fee of the adjacent lands as is contemplated by this provision of the constitution. The easement of the highway is in the public, although the fee is technically in the adjacent owner. It is

the easement only which is appropriated, and no right or title of the owner interfered with."

· The Supreme Court of the United States has sanctioned the doctrine that the ownership of the fee to the center of the street is immaterial. See *Burney v. City of Keokuk*, cited in the opinion of Justice Adams.

I concede that there are cases which recognize a contrary doctrine. But they are nearly all based upon the doctrine that the use of a street for a railway is an additional servitude not authorized by the original dedication. This doctrine has been expressly repudiated by this court. In *Milburn v. The City of Cedar Rapids*, *supra*, the doctrine is sanctioned that the laying down and operating a railway track over a part of a street is not an unreasonable obstruction of its free use, nor incompatible with its original dedication. There are but few cities in this state in which the fee in the center of the street belongs to the owner of adjacent lots. Where additions are made to these, under the existing statutes, the fee vests in the corporation for the use of the public. There seems to me to be no propriety in a rule which denies recovery to part of the lot owners in a city or upon a street, and at the same time permits others, who have sustained no more real injury, to recover. I think the rule adopted in *Slatten v. The City of Des Moines* applies equally to the case where the lot owner owns the fee to the center of the street. Holding, for these reasons, that the judgment should be reversed, I deem it unnecessary to express an opinion upon the other questions discussed.

I am authorized to state that Seevers, J., concurs in these views.