JOHN L. McCORMICK

*v.*

WILLIAM L. HUSE.

| 78 | 363 |
|----|-----|
| 120 | 522 |

| 78 | 363 |
|----|-----|
| 142 | 351 |

| 78 | 363 |
|----|-----|
| 214 | ²290 |

1. ALLEGATIONS AND PROOFS. If the plaintiff in ejectment, in his declaration, describes the land sued for as lying south of the *west* half of a given quarter section, and between the south line of such quarter and a bayou, and the proof shows that his land lies south of the *east* half of the same quarter, he can not recover.

2. BOUNDARIES—*reference to government plat.* Where fractional pieces of land are patented, bounded, in part, by a stream, or bayou, and there is a dispute as to the boundaries, the original plat, or a copy thereof, may be resorted to, and the lines as originally run will control.

3. Where a fractional half quarter section appears, from a government plat made from the original field notes of the survey, to have a clearly defined south line from a common corner of certain sections, 1266 links to a bayou of the Illinois river, which is navigable, and running thence northwesterly to the west line, the patentee and those claiming under him will be restricted to the boundaries as shown by the plat and field notes, and the bayou will form a part of the boundary line.

4. Where a quarter of land is made fractional by a navigable water course, a party receiving a patent for a fractional part of it on one side of the water course, where the area sold to him is noted on the plat of the fractional tract called for by his patent, and the contents calculated, his entry and purchase will not extend across the stream, so as to embrace that part of the quarter on the other side. In such a case, the party purchases by the plat.

APPEAL from the County Court of La Salle county; the Hon. CHARLES H. GILMAN, Judge, presiding.

This was an action of ejectment, brought by John L. McCormick against William L. Huse. The opinion of the court states the facts of the case. It also appears, from the record, that, on June 11, 1836, John Dascomb purchased the west half of the south-west fractional quarter of section 20, in the same township with the land in dispute, the patent stating that it contained 52.75 acres, by government survey; that, on July 10, 1844, the United States conveyed the east half of the same quarter to Goodrich Hubbard; that, on June 29, 1835, Hiram Holmes purchased of the United States the west half of the north-west fractional quarter of section 29, containing, according to government survey, 70.70 acres, the east half containing 62.55 acres; that, on November 2, 1865, the plaintiff purchased the north-west part of the north-east fractional quarter of section 29, and the north-east part of the north-west fractional quarter of section 29, and that the quantity of each, as shown by the government surveys, was, the first 2.98 acres and the last 1.85 acres. All the patents and certificates of entry were in the usual form, and, after the statement of the number of acres, were these words: "According to the official plat of the survey of the said lands returned to the general land office by the Surveyor General."

Messrs. Dickey, Boyle & Rickolson, for the appellant.

Messrs. Eldridge & Lewis, for the appellee.

Mr. Justice Breese delivered the opinion of the Court:

This was ejectment, in the county court of La Salle county, brought to the December-term, 1871, by John L. McCormick, plaintiff, against William L. Huse, defendant, to recover the possession of two certain tracts of land, one described in the first count of the declaration as that part of the north-east part of the north-west fractional quarter of section 29, in township 33 north, of range 1 east of the third principal meridian, which lies south of the west half of the south-west quarter

of section 20, in said township, and between the south line of said section 20 and the bayou, or arm, of the Illinois river, which passes through said section 29.

In the other count of the declaration, the tract sued for is thus described : that part of the north-east part of the north-west fractional quarter of section number 29, in township 33 north, of range 1 east of the third principal meridian, which lies south of the west half of the south-west quarter of section 20, in said township, and between the south line of said section 20 and the bayou, or arm, of the Illinois river, which passes through said section 29.

The general issue was pleaded, and submitted to the court for trial without a jury, the defendant admitting he was, at the time of the commencement of the suit, in possession of whatever land there is in section 29, town 33, range 1 east, lying south of the west half of the south-west quarter of section 20, in that township, and north of the bayou of the Illinois river.

To maintain the issue on his part, the plaintiff introduced in evidence a patent from the United States, bearing date May 17, 1866, by which there was granted to him and to his heirs the north-west part of the south-east fractional quarter, and the north-east part of the north-west fractional quarter of section 29, in township 33 north, range 1 east of the third principal meridian, containing $4 \frac{83}{100}$ of an acre, " according to the official plat of the survey of the said lands returned to the general land office by the Surveyor General."

The plaintiff then produced Daniel F. Hitt, who testified he was a surveyor, and had been more than thirty years, spending twelve of those years in surveying the public lands as a government surveyor, and had been county surveyor; that he was acquainted with section 29 ; that a large bayou of the Illinois river passes through the north-west and north-east quarters of the section ; that he made a survey of the section according to the government survey, and that the plat shown him is a correct representation of the land in the

northern part of the section, and of the adjacent lands lying north of it, being on section 20, and of the location of the several parts thereof, of which map he introduced a copy, and stated that the map was made from an actual survey, made in June, 1871; that, in making this survey, he found the quarter section corner on the section line between sections 29 and 20, which was identified by a stone and two "witness trees" which he found. Witness, at the same time, surveyed that part of the north-west quarter of section 29 which lies north of the "bayou;" that the north line of that quarter, starting at the above named quarter section corner, extends west on the section line 2518 links from said corner, and strikes the bayou. From his knowledge as a surveyor, he testified the boundaries of the north-east part of the north-west fractional quarter of section 29 were as follows: The north line was 2518 links, and the east line 642 links, running south from the above mentioned quarter section corner to the bank of the bayou at low-water mark, and that the south-west boundary was the bayou; that the line on the map marked in d, c, a, shows the north boundary of the bayou at low-water mark, and running from the west end of the northern boundary of the tract at a point 2518 links west of the said quarter section corner, along the bank of the bayou, to the south end of the eastern boundary of the tract, at a point 642 links south of said quarter section corner. He testified the tract within these boundaries overruns the amount called for by the government survey. This witness further testified that no part of the north-east part of the north-west fractional quarter of 29 lies south of the west half of the south-west quarter of section 20, and between that part of said section 20 and the bayou, and that the part of the north-east part of the north-west fractional quarter of 29 which lies south of the west half of the south-west quarter of 20, and between that part of 20 and the bayou, contained about $1 \frac{9}{100}$ of an acre, as shown by lines at b, c, c, a, on the

plat; that the line a, b, was 518 links long, and the line b, c, 422 links long.

The witness then speaks of trees found by him on the lines run. Into this field of inquiry, in the view we are compelled to take of the case, it is unnecessary to enter.

At the conclusion of this investigation, the defendant produced the book of plats, from the office of the county clerk, which, by agreement, "was received in evidence of the government survey in question."

A plat of sections 20 and 29, copied from this book of plats, is in the record, and we have carefully examined it, and, from our knowledge of the government plats, and from the proofs, we have no question it is a correct copy of the original in the Surveyor General's office, and in the land office where the tracts in controversy were, and by which, these lands were purchased.

It differs, in several important particulars, from Hitt's plat, shown in the record as Map 1, and shows very clearly the two tracts purchased by appellant as one tract, and described in the declaration, and shows with equal clearness that no part of the tracts sued for lie south of the west half of the south-*west* quarter of 20, as appellant has declared, but the tract containing $1\frac{85}{100}$ acres, lies south of the *east* half of said south-west quarter, and the tract described in the first count lies south of the west half of the *north-east* quarter of that section. That is a small fraction lying between the south line of the west half of the north-*east* quarter, and between that and the north bank of the bayou, which, on the plat, is consolidated with the fraction lying south of the east half of the south-west quarter of 20, and in that shape sold to appellant and patented to him. On the plat, the first above described fraction lying south of the east half of southwest fractional quarter of 20, is marked thereon as containing $1\frac{85}{100}$ acres. The area of the two fractions, this being one, is marked on the plat at the point where the east line of the quarter section would run if protracted with the figure 5,

with these marks on each fraction: " ", indicating they are consolidated and to be sold together as one tract containing 5 acres, made up of the north-east part of the north-west quarter of 29, and the north-west part of the north-east quarter of 29, which the plat conclusively shows it is so made up.

For neither of these tracts has appellant declared. His witness, surveyor Hitt, testifies that no part of the north-east part of the north-west fractional quarter of 29 lies south of the west half of the south-west quarter of 20, and between that part of section 20 and the bayou.

In the argument of appellant, this fraction containing $1\frac{85}{100}$ acres is the fraction claimed as part of appellant's purchase, and as part of the $4\frac{83}{100}$ acres specified in his patent. It is, unquestionably, judging from the plat, and which we are bound to take as correct, that part of the $4\frac{83}{100}$ acres lying south of the east half of south-west 20.

No issue has been made up and tried on this tract of land. The affirmation is of a tract of land lying south of the west half of the south-west 20, and between the south line of said section 20 and the bayou. The admission of the defendant is, that he is in possession of whatever land there is in section 29 lying south of the west half of said south-west quarter.

The tract proved by the plat from the county clerk's office, which is a copy from the plat in the general land office, is a tract lying south of the east half of the south-west fractional quarter of 20, and south of west half of south-east quarter of same, and the argument of appellant is mainly devoted to the tract claimed to be part of the N. W. of 29.

As we have said, this entry and purchase by appellant is plainly denoted on the government plat, and made one tract by the consolidation of two fractions: one the north-east part of the north-west fractional quarter of 29, which contains $1\frac{85}{100}$ acres; the other, the north-west part of the north-east quarter of the same section, containing land enough, which, added to the $1\frac{85}{100}$ acres, shall make a fractional tract contain-

ing five acres, but no portion of the same lies south of the
west half of the south-west fractional quarter of section 20,
as appellant has declared. The same appears from the plat
attached to appellee's argument.

Surveyor Hitt testifies, the north line of the north-east
part of the north-west fractional quarter of 29 is 2518 links,
and so made by extending the line from the corner of 29 and
20 west to the bayou. The plat before us, which we must
take to be correct, shows no line of that length—it reaches
the bank of the bayou at a distance of 1266 chains west. This
same line, extended east from this same corner 1675 links to
the bayou, is the northern boundary of the land purchased
by appellant and patented to him, the southern, eastern and
western boundaries being the bayou, which makes a curve
between those points of the north line or boundary. Mr.
Hitt says his survey overruns the government survey, as it
evidently does, and gives to appellant land he has no pretense
to claim under his purchase and patent. His patent calls for
no land south of the south line of the west half of south-west
20, but is confined to that land which lies south of the *east*
half of that quarter, and south of the west half of the south-
east quarter of that section. This view reconciles the patent
to appellant and the government plat, and establishes appel-
lant's right to all the land north of the bayou, being part
the north-west 29, containing $1\frac{85}{100}$ acres, and that part of the
north-west part of the north-east quarter of the same section,
also lying north of the bayou, containing land enough, when
added to the $1\frac{85}{100}$ acres, to make five acres of land.

Mr. Hitt's plat of his survey, made in 1871, if he has cor-
rectly platted the old meandered line run by the government
surveyors, shows the bank of the bayou was, at that time
(1820), but 1268 links west of the corner at 20 and 29, and
the line east from that corner was, in 1871, as in 1820, or
nearly so, namely: 1625 links. In 1820, one of these lines,
the one west to the bayou, was, in length, 1266 links; the
other, east to the bayou, was 1675 links, a slight difference,

24—78TH ILL.

and which may be accounted for, perhaps, by difference of instruments, and inaccuracy of the different surveyors.  Be this as it may, we are fully satisfied appellant is entitled to no land south of the west half of the south-west quarter of 20, lying north of the bayou, consequently he was not entitled to recover any such tract of land.

Whilst upon this case, and to save protracted litigation, as we have thoroughly examined all the questions raised by these parties, it may not be improper to state the conclusions we have reached, as to appellee's claim to any land north of this bayou.  His claim is based on Hubbard's patent for the east fractional half of the south-west quarter of 20, he contending that, under that patent, he has the right to extend the east line of that tract to the centre thread of the bayou.  The county court so found.

That this claim can not be allowed, can be readily shown. By the plat of which we have spoken, as well as by the plat adopted by appellee in his argument and annexed thereto, the east half of the S. W. 20, patented to Hubbard, is fractional, and is defined on the plat as bounded north by the Illinois river, and a line extending from the bank of the river east to the north-west corner of the south-east quarter of 20 ; thence south, by a straight line, to a stone, which Hitt found at the south-east corner of the south-west quarter, which was the corner between that quarter and the south-east quarter, and is a corner common to those quarters and to the north-west and north-east quarters of 29 ; thence west on the south line 1266 links, to the bayou ; thence northwesterly, by the bayou, to a point where the west line of this east half strikes the bayou ; thence north by a line parallel with the east line of the quarter section, to the Illinois river ; thence east with the river, to the right line running east to the north-west corner of the south-east quarter of section 20, containing 74.73 acres of land.

All the government lands in this section were sold by this plat.  By it, section 20 is fractional, a great part of it on

an island formed by the Illinois and a bayou. It is not denied, this bayou is navigable. By article 4 of the ordinance of July 13, 1787, it is declared, the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways, and forever free; and by the act of 3d March, 1803, and 26th March, 1804, and May 18, 1817, it was declared that the navigable rivers and streams through the domain of the United States should be and remain public highways.

By an act of Congress, passed 11th February, 1805, a mode of surveying the public domain was adopted, by the second section of which it was declared that the boundaries and contents of the several sections, half sections and quarter sections shall be ascertained, in conformity with the following principles: 1st. All the corners marked in the surveys returned by the Surveyor General, shall be established as the proper corners of sections or subdivisions of sections which they were intended to designate; and the corners of half and quarter sections, not marked on the said surveys, shall be placed as nearly as possible equi-distant from those two corners which stand on the same line. 2d. The boundary lines actually run and marked in the surveys returned by the Surveyor General, shall be established as the proper boundary lines of the sections or subdivisions for which they were intended; and the length of such lines, as returned, shall be held and considered as the true length thereof. And the boundary lines which shall not have been actually run and marked, as aforesaid, shall be ascertained by running straight lines from the established corners to the opposite corresponding corners; but in those portions of the fractional townships where no such opposite corresponding corners have been or can be fixed, the said boundary line shall be ascertained by running from the established corners, due north and south or east and west lines, as the case may be, to the water course, Indian boundary line, or other external boundary of such fractional township. 3d. Each section or subdivision of section, the contents

whereof shall have been returned by the Surveyor General, shall be held and considered as containing the exact quantity expressed in such return or returns; and the half sections and quarter sections, the contents whereof shall not have been thus returned, shall be held and considered as containing the one-half or the fourth part, respectively, of the returned contents of the section of which they make part.

By the act of May 18, 1796, it is provided, that every surveyor shall note, in his field book, the true situation of all mines, etc., which shall come to his knowledge. These field books shall be returned to the Surveyor General, who shall therefrom make out and transmit to the officers who may superintend the sales, a description of all the lands surveyed; and he shall cause a fair plat to be made of the townships and fractional parts of townships contained in the said lands, describing the subdivisions thereof and the marks of the corners. This plat is to be recorded in a book kept for that purpose, and copies sent to the proper officers.

By the act of April 24, 1820, and April 5, 1832, subdivisions of fractions were permitted. By the act of April, 1820, every section of the public land was regarded as "fractional" which was interfered with by a navigable stream. 2 U. S. Land Laws, Instructions and Opinions, p. 408.

From the plat in evidence, made from the "field books," and the area, calculated as required by law to be done, the south line of the east half of the S. W. fractional quarter of 20, patented to Hubbard, is a clearly defined line, 1266 links west from the common corner of the sections above specified to the bayou, and thence with the bayou north-westerly, and thence, as before described, north to the Illinois river, thence east with the river to the line running to the north-west corner of the south-east quarter of 20. It is apparent, from this plat, no part of either of the tracts patented to appellant forms any part of the south-west 20.

From what we have said in regard to appellant's title, and the position of his land as patented to him, it is obvious,

Holmes' entry and purchase did not extend north of the bayou. The area sold to him is noted on the plat of the fractional tract called for by his patent. The north-west quarter of 29 being made fractional by a navigable water course, the lines run upon the plat and the contents calculated, must, under the act of Congress we have cited, confine him to the south of the bayou—there is no just pretense of a right to extend his lines across this bayou. The plat shows this bayou was meandered by the government surveyors. This is never done on streams not navigable. We here do not speak of streams navigable at common law, where the tide ebbs and flows, but navigable as understood by Congress when the ordinance and subsequent acts of Congress were passed.

No line could be run or corner established on a navigable stream, such as the act of Congress demands. Where such a stream obstructs the line being run, the line terminates at the stream, and extra corners are marked, as this plat shows, as do all other plats of fractions on a navigable stream from the Surveyor General's office. They are constructed with express reference to the law we have cited, and from field books made by sworn surveyors. The fractions claimed by appellant are thirty rods distant from the land bought by Holmes, and this distance a navigable water course.

Holmes, in purchasing the east half of south-west of 29, purchased by the plat in the land office and the contents within the lines delineated on the plat. He saw those lines did not take him across the bayou. If this east half was the half of a full quarter section, he would have, of course, been entitled to 80 acres, unless otherwise specially limited. By the plat, field notes, entry and purchase, he is limited to $62\frac{55}{100}$ acres, and the plat shows that is the exact quantity south of the bayou.

It is claimed by appellee, that quantity is not a reliable description.

This court, in *McClintock* v. *Rogers*, 11 Ill. 279, said, in construing a patent from the United States, which describes

the land granted by the number of the township, section and range, the court would look to the plat and field notes made and returned to the Surveyor General by the government surveyors in order to locate the land. Quantity, although the least reliable and the last to be resorted to, of all descriptions in a grant or deed, in determining the boundaries of the premises granted, may sometimes be considered in corroboration of other evidence.

Now, where the plat is shown, and the number of acres within certain lines and boundaries is clearly specified, can there be more convincing evidence that the quantity specified must be found within those lines and boundaries? We think not. The area may be more or less on a new survey, but by the act of Congress the area noted on the plat is to be taken, for all practical purposes, as the true area.

There is, in our opinion, nothing in this record to justify appellee in asserting a claim under Holmes' entry to any land north of the bayou, and nothing in Hubbard's entry to justify his claim to this triangular piece of land north of the bayou, and between it and the south line of the east half of south-west of 20.

As appellant, however, has not claimed in the pleadings any title to land so situated, the judgment against him was properly rendered, and it must be affirmed. He can, if he desires it, bring his action for the land south of the south line of the east half of the south-west 20, which his patent covers.

*Judgment affirmed.*