SARAH DASHIEL, Appellee, v. ELI HARSHMAN, Appellant.

**Deeds:** RECITAL OF AREA CONVEYED:   *Covenants.* Where in a deed of land there are no express averrments or covenants as to quantity, a statement as to the number of acres conveyed will yield to the actual area, as ascertained by reference to the plat, field notes, monuments, or other certain descriptions of the premises conveyed.

**SAME:** *Boundaries.* A river ran through a quarter section of school land at the time of the government survey, so as to leave 83.2 acres of land, part being north and part south of the river. The river was meandered, but the section was not subdivided by the government. The state issued a patent to plaintiff for forty acres of the east end of the quarter section, and a patent to another for forty-three and two-tenths acres of the quarter. *Held,* that plaintiff's patent vested title in her to forty acres on the east side of the quarter section, excluding the river as meandered by the United States survey; that the

width of such tract was equal on the north and south lines thereof, and the west line thereof parallel with the east line of the section.

AGREED BOUNDARIES: *Burden of proof.* A quarter section of land, through which a meandered river ran, contained 83.2 acres of land, partly north and partly south of the river. Forty acres of the east end of the quarter was patented to plaintiff and forty-three and two-tenths acres of the quarter was patented to another. Defendant claimed that by agreement of the patentee the land was divided between them so as to make the north line of the river, instead of the south line of the quarter, the south line of plaintiff's quarter. *Held,* that the burden was on the defendant to show such agreement and division, and, in the absence of such showing, plaintiff's land should be held to extend to the south line of the quarter section.

MEANDERED STREAMS: *Accretions.* Where a meandered navigable stream runs through a government subdivision of land, a patent of such subdivision does not convey to the patentee title to the land in the stream between the meander lines, since title to such land is in the state, subject only to the riparian rights of the owners of the land on either bank, and, the lines being subject to change, the title of the adjoining owner follows the meanderings of the stream.

*Opinion evidence as to area.* Where plaintiff owned land through which ran a meandered river, which had changed its bed materially since a government survey and plat were made, and there was no plat or survey made since the location of the river changed, a witness familiar with the land, may testify as to the number of acres on one side of the river.

**False Representations:** RELIANCE: *Deeds.* Plaintiff, owning 29.11 acres of land executed a quit claim deed thereof to defendant for one dollar, relying on his statements that the deed did not affect her land in any way and on his promise that, if there was anything in the deed which affected the title to her land, he would make it good. Plaintiff sought to recover the value of the land, which defendant had conveyed to a third party, on the ground of fraud in obtaining the deed. *Held,* that plaintiff need not show that it was the false representations alone that she relied on, but, if the false statements was one of the inducements that led her to act, it was sufficient, though the statement was coupled with a promise, the breach of which would not of itself constitute fraud.

*Evidence of reliance.* Plaintiff owned 29.11 acres of land in the east half of the quarter section, and executed a quit claim

deed thereof to the defendant for one dollar. In her petition she alleged that she executed the deed relying on defendant's statement that the deed did not affect her land or her title. *Held* that this allegation was supported by evidence that defendant stated that the deed covered only the west half of the quarter section to which she claimed no title, as defendant knew.

PLEA AND PROOF: *Harmless error.* Plaintiff, owning 29.11 acres of land, executed a quit claim deed thereof to defendant for one dollar, relying on his statements that the deed did not affect the land in any way. The petition in action to recover the value of the land also alleged other false statements made by defendant relating to the deed, and there was evidence supporting such allegation. The court required the jury to find not only that these false statements were made, but also the false statements on which she alleged she relied, and that she relied on all of them, in order to justify plaintiff's recovery. *Held* that there was no error in this charge as against defendant, but that it was more favorable to him than he was entitled to.

OPINIONS. Where defendant obtained from plaintiff a quit claim deed of her land for a nominal consideration, falsely representing to her that the deed did not cover her land or affect her title thereto, such representations were not mere legal opinion, but were fraudulent representations of fact, on which she might rely, and recover damages thereby.

NEGLIGENCE AS ESTOPPEL. Plaintiff executed a quit claim deed of her land to defendant for a nominal consideration, relying on his representations that the deed did not affect her land or her title thereto in any manner. She was advanced in years, her eyesight was defective, and she was unacquainted with the description of her land, as her patent was destroyed by fire thirty-six years before. She objected to signing the deed until she had shown it to her attorney, to see if it was all right; and, to induce her to sign it then and there, defendant made the false representations. *Held*, that she was not estopped from claiming fraud by her negligence in not ascertaining the contents of the deed.

Instructions on Title by Accretion: REQUESTS. Plaintiff was the original patentee from the state of the east sixty rods of the southeast quarter of a school section. A meandered stream run through the land, the south line of which crossed the south line of the section about forty rods west of the southeast section corner which was located near the center of the stream, leaving plaintiff one and forty-six tenths acres south of the

stream. Afterwards the bed of the stream moved northward until there was 29.11 acres south of the stream, within the east sixty rods of the southeast quarter. Defendant by fraudulent representations obtained a deed from plaintiff of his 29.11 acres, and conveyed it to a third party. In a suit by plaintiff to recover the value of his land, the court charged that any accretions to the land of an abutting owner made by the river would inure to the benefit of such owner, and if there were accretions south of the river, within the east sixty rods of the southeast quarter of the section, and if the plaintiff was the abutting owner thereof it would inure to her benefit, but only to the extent to which the same was added to her land abutting threon, and included in the east sixty rods of the quarter section. *Held*, that the charge was good, as far as it went, even if plaintiff was not entitled to all the accretions south of the river within the east sixty rods of the quarter section, as the jury were not required to award plaintiff the value of all the accretions, or of any more than were added to her abutting land within said sixty rods; and, if defendant wished a charge more explicit in defining the rights of abutting owners it was his duty to have asked it.

Appeal:  REVIEW OF VERDICT REDUCED BY COURT. Where a verdict is rendered for an amount in excess of that justified by the evidence and the trial court has reduced the amount to such sum as it deemed proper, and the amount as so reduced is supported by the evidence, and the verdict is supported by the evidence, and the trial court has reduced the amount to such is not reversible on the ground that the verdict is the result of passion and prejudice.

*Appeal from Wapello District Court.*—HON. ROBERT
SLOAN, Judge.

WEDNESDAY, FEBRUARY 6, 1901.

ACTION to recover the value of certain lands alleged to have been deeded the defendant by reason of his fraud and misrepresentations. So far as material, the issues will be referred to in the body of the opinion. Trial to a jury, verdict and judgment for plaintiff, and defendant appeals. —*Affirmed.*

*W. S. Coen* and *McElroy & McElroy* for appellant.

*Geo. W. Dashiel* and *McNett & Tisdale* for appellee.

DEEMER, J.—The subject-matter of the controversy, to-wit, 29.11 acres of land with the exception of 1.46 acres lying outside the government meander line in the southwest corner of the tract, is all accreted, having formed since the originial government survey in the year 1847. Plaintiff claims that she formerly owned the land, and that defendant obtained a deed thereto by fraud. Defendant denies plaintiff's ownership. Says that he was at all times the equitable, if not the legal, owner of the property; that he had deeded the same to one Stroud in the year 1893, and in good faith and without fraud procured a quitclaim deed from plaintiff and her husband for the express purpose of clearing the title thereto in his grantee. Plaintiff's title is based on three patents issued by the state of Iowa. The first, No. 10,140, was issued to plaintiff, and conveyed the southeast fractional quarter of section 16, containing 83.2 acres; the second, No. 10,087, purports to convey to plaintiff 40 acres of the east end of said quarter; and the third purports to convey to George W. Dashiel, plaintiff's father-in-law, 43.2 acres of said quarter. The evidence shows that the first patent was returned to the school fund commissioner, in order that plaintiff might let her father-in-law have the tract that was covered by the patent which was issued to him, and that the second and third patents were issued in lieu of the first. Thereafter plaintiff and her father-in-law had a surveyor make a division of the land, and this he did by running a line 60 rods west of the east line of the fractional quarter section. The deed to the defendant covered the land in the above mentioned fractional quarter, south of the Des Moines river, that runs through this quarter, and east of the 60-rod line established by the surveyor.

The first point made by the defendant is that plaintiff's patents do not cover the land in controversy. The lands were originally surveyed in the year 1847; and, that a better understanding may be had of the situation, we append a copy of the plat, certified by the surveyor general:

The Des Moines river, which runs through the section as shown by this plat, had worked its way northward until at the time of trial the south bank was 12.97 chains north of the southeast corner of the section, and at the center of the southeast quarter was near where the north bank was at the time of the original survey. There is no doubt that the original patent conveyed the whole of the southeast quarter of the section. The number of acres mentioned therein in not controlling, for it is a general rule that, independent of express averment or covenant as to quantity, a statement as to the number of acres conveyed will yield to the actual area, as ascertained by reference to the plat, field notes, monuments, or other certain description of the premises conveyed. *Ufford v. Wilkins*, 33 Iowa, 110; *Schlosser v. Cruickshank*, 96 Iowa, 414. If the case stood alone on the original patent,

there would be no doubt of plaintiff's title to at least a part
of the land in controversy which lies south of the river as it
runs through that section. The meandered line of the river
was not treated as a boundary in any of the patents and was
run simply to mark the sinuosities, course, and distance of
the river. The southeast corner of the section, as fixed by
the government surveyor, was evidently in or near the mid-
dle of the stream. But defendant contends that neither of
the two subsquent patents made to take the place of the first
one covers the land in dispute, that lies south of the river,
in the southeast quarter of the section. As bearing on this
proposition, the court instructed that the second patent is-
sued to plaintiff vested title in her to 40 acres on the east
side of the quarter section, excluding the Des Moines river
as meandered by the United States survey, and that the
width of such tract would be equal on both the north and
south lines thereof, and the west parallel with the
east sectional line, and that the burden was on the
defendant to show that when she and her father-in-
law divided the land between them, after the second and
third patents were issued, they agreed upon and recognized
the north bank of the river as the southern boundary of their
tracts. It further instructed that the Des Moines river was
a navigable stream, and that the meandered space between
the two banks of the river did not pass by the patents hither-
to mentioned. These instructions are complained of, and it
is further argued that the evidence shows beyond dispute
that neither plaintiff nor her father-in-law ever made claim
to any of the land lying south of the river. We think the in-
structions are clearly correct. Forty acres off the east side
of a fractional quarter ordinarily means just what
the trial court says it does. As the Des Moines river
was a navigable stream, the patents did not convey
the land lying between the meandered lines of the river.
Title to that land was in the state, subject only to the ripar-

ian rights of the owners of the land on either bank of the
stream.   *Schlosser v. Cruickshank,* 96 Iowa, 414.
These meandered lines did not fix the boundaries of
the land.   They were subject to change, and title fol-
lowed the meanderings of the streams.   *Tomlin v. Railroad
Co.,* 32 Iowa, 106; *Musser v. Hershey,* 42 Iowa, 356.   So
that the court was correct in excluding the land lying be-
tween the meandered lines from the 40 acres.   It was also
correct in saying that the burden was on defendant to show
that plaintiff did not make claim to any part of the land
lying south of the river that was included in her patent.   This
conclusion follows from what we have hitherto said regard-
ing the land described in the patents.   The evidence was in
conflict regarding this last point, and we are not to interfere
with the conclusions of the jury on this proposition. Defend-
ant may have had a peponderance of the evidence, but that
is not for us to determine.   *McCormick v. Huse,* 78 Ill.,
363, relied on by appellant, is not in point.   There the
original survey showed a fractional half section divided by
a bayou, and the government issued separate patents for the
land lying on either side thereof.   Each patentee knew, from
the field notes, plat, entry, and purchase, that he was getting
lands bounded by the meandered lines of the bayou.   The
number of acres on either side was shown, and the court held
that, under the facts of the case, quantity was a part of the
description.   Here the government surveyor did not under-
take to subdivide the section, as it was school land; and the
jury may have found, as we have said, that the patentees
understood they were getting all their deeds called for.   There
in some evidence regarding a map or plat in the office of the
school-fund commissioner that plaintiff's husband saw about
the time she obtained her patent, but the jury may have
found from the evidence that he thought he was getting all
the land in the quarter section covered by the first patent.
The plat or map itself is not in evidence, and we have no
means of knowing what it showed, or of its authenticity.

There is no evidence that the state authorities ever subdivided the sections, except as it was done through the patents issued by it, which referred to the original government survey. The state has never attempted to issue any other patents for this quarter than those to which we have referred.

II.   Holding as we do that the jury was warranted in finding that plaintiff had title to some of the land lying south of the river, the next question that demands our attention is that of fraud in obtaining the conveyance. That defendant obtained a quitclaim deed to the part of land in dispute from plaintiff and her husband for the sum of one dollar is admitted. Plaintiff claims that this conveyance was obtained by and through the fraud of defendant, in representing that it was for the purpose of clearing up title to the west half of the quarter section, that there was nothing in the deed except a release of a flaw in the title to that half, and that there was nothing in the deed that in any manner affected title to her land, and that if there was he would make it good. The only statements plaintiff pleads she relied upon were that the deed did not affect her land in any way, and the promise to indemnify her in case it did. The promise to indemnify would not of itself constitute fraud. It might give plaintiff a cause of action for breach of contract, but not one sounding in tort. This is elementary doctrine, and needs no citation of authorities in its support. But it is also true thatp laintiff need not show that it was the false representation alone that she relied on. If the false statement was one of the inducements that led her to act, it was sufficient, although the statement was coupled with a promise, the breach of which would not of itself constitute a fraud. It is admitted that defendant and his attorney both stated to plaintiff before she executed the deed that it did not affect plaintiff's land. The evidence is in conflict regarding the alleged statement,—that they said it was for the purpose of clearing up the title to the west 40 only. In view of that conflict, we cannot interfere with the findings

of the jury on that issue. · But it is said that neither of these representatations, even if true, can be the basis of a claim of fraud; that they were merely expressions of a legal opinion; and that plaintiff was not justified in relying thereon. We cannot agree with counsel in this contention. The statement was in some sense a statement of a legal conclusion, but it was also a statement of fact. Whether or not a particular tract of land is covered by a deed is ordinarily a matter of fact. There may be questions of law mixed with it, but primarily the question is one of fact. The deed did cover land that was included in plaintiff's patent, if that patent be valid. But it was not the legal question that was being discussed. It was simply the fact question as to whether or not it was so written as to cover the east half of the fractional quarter. That it did not cover it is undenied, and that the jury may have found that defendant said it only covered the west half is clear, if plaintiff's evidence is to be believed. In this connection defendant complains of the eleventh and twelfth instructions given by the court. They are too long to be copied at length. The exact complaint is that certain representations said to have been made by defendant, but which are not claimed to have been relied on in the petition, are made the basis of a claim of fraud. It is true that the court did refer to such statements, but they are all charged in the petition, although it is not said that plaintiff relied on each of them, and there was evidence to sustain them. Had the court authorized the jury to find fraud from these statements alone, there would no doubt have been prejudicial. This it did not do, however. It required the jury to find not only that these statements were made, but that the others on which plaintiff says she relied were also made, and that all were relied on by plaintiff. The instruction was more favorable to defendant than he was entitled to. If any one may complain of them, it is the plaintiff. No statements or conduct not referred to in the petition were

alluded to in the charge, and there is no claim that the verdict is not supported because of no proof to show that plaintiff relied on each and all of the statements charged. Aside from this, however, a statement in the pleadings that defendant represented that the deed did not affect plaintiff's land would be supported by evidence that defendant represented that it covered nothing but the west half of the fractional quarter. She was making no claim to this west half, and defendant knew that she had no title thereto. The statement in the pleading was of an ultimate rather than an evidentiary fact, and would be supported by evidence of the character indicated.

III. Defendant further claims that plaintiff is estopped by her own negligence from claiming fraud. In this conection he says that the verdict is contrary to the tenth instruction. That instruction reads as follows: "If you find from the evidence in the case that the plaintiff, Sarah Dashiel, signed the quitclaim deed in question in this case without acquainting herself with its contents, then she is estopped by her own negligence from asking relief from the obligation created thereby, and is bound by said quit-claim deed, acording to its terms and the description of the property as set forth therein, unless you find that her signature thereto, without the knowledge of the contents thereof and description of the land therein quitclaimed, was procured from her by fraud." To properly determine this point, reference must also be made to a part of the eleventh instruction bearing on the same subject, as follows: "(11) But if you find from the evidence in the case, at the time said deed was executed, that the plaintiff was advanced in years, and that her eyesight was defective, and that she was unacquainted with the description of her land by numbers, by reason of the fact that the original patent to her land had been destroyed by fire in 1861; and if you further find that she told the defendant that she would wait until she had an opportunity to take legal ad-

vice and consult here attorney, and if upon so doing, she found everything all right and as represented by defendant, she would sign the deed; and if you further find, for the purpose of inducing her to sign the same then and there, that the defendant falsely and fraudulently represented," etc. The eleventh instruction, in so far as it has a bearing on the point under consideration, is not complained of. If it had been, the complaint would be without merit. *Williams v. Hamilton,* 104 Iowa, 428; *Sutton v. Risser,* 104 Iowa, 631. The two propositions were submitted to the jury, and it evidently found, under the eleventh instruction, that plaintiff was not negligent. Believe as we may about this finding, it has evidence to support it, and we should not interfere.

IV. Certain rulings on evidence are complained of. The court sustained objections to certain questions as not proper cross-examination. Strictly speaking, perhaps this is true; yet no error would have been committed had the trial court admitted the evidence. The whole matter rested in the sound discretion of the trial court, and we will not interfere. The defendant might have offered the evidence in his own behalf, had he been so advisd, and no possible prejudice resulted. Plaintiff's husband was permitted to testify as to the number of acres of land north of the river. Objection to this on the ground that it was a conclusion, and not the best evidence, was overruled. We think the ruling was correct, for the river was changing from time to time, and the number of acres on either side was a question of fact. Moreover, there was no plat or survey showing these facts. In any event, the ruling was without prejudice.

V. Defendant claims that the greater part of the land lying south of the river was accreted, and should be divided between plaintiff, the owner of the west half of the quarter, and the owner of the land adjoining section 16 on the south. Reference to the plat will disclose the basis of this claim. It is said in argument, and is, no doubt, true, that accreted

land is to be divided so that each of the proprietors of the former shore line will have the same proportion of the new as they had of the old. *Coulthard v. Stevens,* 84, Iowa, 241. The exact point is that the court ignored this rule in its instructions, and permitted the jury to find that all of the accreted land south of the river belonged to the plaintiff, and was transferred by the deed to the defendant, and did not limit the amount of accretions for which plaintiff was entitled to recover. The material part of the instruction complained of reads as follows: "(22) When the United States surveyed the land through which the Des Moines river flowed, and abutting thereon on either side of said river, the same was treated as a navigable river, and the land along its shores was meandered on both sides of said river, and the space between the meander lines on each shore was excluded in calculating the number of acres in any section or part thereof through which said river flowed; and the purchasers of the tracts of land abutting upon said river acquired title to the meander line of said river, but at the same time became what is known in law as 'riparian owners,' so that the encroachment by the river upon their land, and washing away, would be their loss, and at the same time any accretions made by the river to their land abutting upon said river would inure to their benefit and become their property, and hence, if you find from the evidence in the case that on the south side of the river, and east of the line 60 rods west of the east line of said section, there have been accretions to the land in said section 16, abutting upon said river, by reason of which the quantity of land abutting thereon has been increased, then such increase would inure to the benefit of the abutting owner thereof, and if the plaintiff was such abutting owner thereof, on the south side of said river it would inure to her benefit, but only to the extent to which the same was added to her land abutting thereon, and included in said southeast quarter section, east of the 60-rod line." It will be noticed that there is nothing

therein that required the jury to award plaintiff the value of the accretions. The instruction is certainly good as far as it went, and, if defendant wished a more explicit one, it was his duty to have asked it. Aside from this, we are by no means convinced that plaintiff was not entitled to all the accretions. Her land, as well as that of the adjoining owners, was described by reference to the original government survey. The meandered line was not mentioned in the conveyance. One corner of the government survey was in the river, and that corner was used as a point of description in the various conveyances. When the meander line is fixed as a boundary, and is not used simply to define the courses, distances, and sinuosities of the stream, it is controlling, and nothing will accrete thereto. How much stronger is this case, where all the conveyances described the land according to the original government survey! As sustaining our conclusions, see Jones, Real Property section 472; Gould, Waters, p. 313; *James v. Howell,* 41 Ohio St. 696; *McClintock v. Rogers,* 11 Ill., 297. Without at this time committing ourselves to this doctrine, we cite these cases to show that, even if the instruction be as defendant claims, it is not without support in the authorities. It is enough to say that the first point made seems to be conclusive. There was, of course, certain land lying between high-water mark and the channel of the river that plaintiff did not own, and could not recover for; but we have no means of knowing how much that was, or, rather, have no reason for saying that the verdict as reduced by the court included these lands.

VI. The last complaint is that the verdict is without support, and is the result of passion and prejudice. We have said it has support in all particulars, save as to the amount of damages allowed. With reference to this the court heard all the evidence, and reduced the verdict returned by the jury to what it thought was a proper amount. We think there is such support that we

ought not to interfere either with the verdict itself, or the amount thereof. No prejudicial error appears, and the judgment is AFFIRMED.