GULIELMA ZOLLINGER, Appellee, v. CITY OF NEWTON et al.,
Appellants.

**ESTOPPEL:** Equitable Estoppel—Use of Streets and Alleys—Im-
1  provements. The destruction by fire of improvements erected by
a property owner in a public alley does not deprive the property
owner of any right of occupancy already acquired. Evidence re-
viewed, and *held* that the act of erecting and occupying a·resi-
dence in a public alley, aided by a contract, the exact terms of
which are not shown, estopped the city to lay any claim to the
alley.

**MUNICIPAL CORPORATIONS:** Streets and Alleys—Dedication—
2  Acceptance—Evidence. The acceptance by the city—the public—
of the dedication of the streets and alleys of a plat is sufficiently
evidenced by the fact that the city has been built on the addition
and its streets and alleys have been used, improved, opened·and
treated as public highways to the extent of the reasonable needs
of the population.

PRINCIPLE APPLIED: A plat, dedicating streets and alleys,
was filed. A town was built on the addition. Later, the town
was incorporated. The use and improvement of the streets were
such as at the time seemed necessary. The real property was
bought, sold, taxed and title quieted by the block and lot num-
bers of the plat. No one ever assumed to sell the streets or alleys,
though, in a few instances, deeds, of an ancient date, assumed
to carry the ''reversionary'' interest in the particular alley in
question. *Held*, acceptance sufficiently shown.

**DEDICATION:** Revocation—Evidence Insufficient. The fact that
3  the dedicators of a town plat, in selling the lots embraced in the
plat, inserted in the deed a clause conveying ''our reversionary
interest in the alleys'', cannot be construed as a revocation of
the dedication of the plat.

**MUNICIPAL CORPORATIONS:** Streets and Alleys—Adverse Pos-
4  session—Estoppel—Improvements. Adverse possession of a pub-
lic alley is a plea that will not avail against the city, yet the plea

of estoppel may. *Held,* the existence in an alley of natural trees, not representing labor or expenditure and not of substantial value, and the like existence at one time of a shed of trifling value, were not sufficient to estop the city in its claim to the alley.

*Appeal from Jasper District Court.*—HON. JOHN F. TALBOT, Judge.

WEDNESDAY, OCTOBER 27, 1915.

SUIT in equity to enjoin the defendant city from opening the alleys in a certain block in said city. Plaintiff alleged, that she was the owner of said purported alleys and prayed that the title thereto be quieted in her. There was a decree for the plaintiff as prayed. The defendant appeals.—*Modified* and *Affirmed.*

*Roy Kelley* and *J. E. Cross,* for appellants.

*C. O. McLain* and *Tim J. Campbell,* for appellee.

EVANS, J.—The alleys in question appear upon the recorded plat as a part of Block 1 of Lamb & Kennedy's Addition to the town of Newton. This plat was filed and recorded in 1855, before the incorporation of the town. The plaintiff claims to have occupied said alleys under claim of ownership for more than 30 years, and to have built valuable improvements thereon. She claims that, though such alleys appeared on the plat of the addition, the city, in fact, never accepted the same; or, if there was an original acceptance, that the city abandoned the same by failing to improve or to use the same; and, further, that she and her grantors have built valuable improvements upon such alleys with the knowledge and acquiescence of the city, and that an estoppel against the city has been thereby created. The following is a plat of Block 1 as at present occupied:

Some time after filing the above plat, a special act was passed by the sixth general assembly, being Chapter 122, providing for the organization of the town of Newton, subject to the vote of the electors at an election to be called for that purpose. This provided for the incorporation into a town of all of the platted portion of Newton, Iowa, with all its additions. An election being held which resulted in favor of incorporation, the formal organization of the municipality as an incorporated town was had. It existed as an incorporated town until 1876, at which time it was organized as a city of the second class. Several of the streets of Lamb & Kennedy's Addition came into immediate use and more or less improvement. As early as 1865, sidewalks were ordered by the town

council on the two streets bounding the block in question on
its east and west sides. J. R. Zollinger, the father of plain-
tiff, in 1873 became the owner of Lots 1, 2 and 3 of said Block
1. In 1880, he became the owner of the south half of Lot 4.
J. R. Zollinger died in 1895, and the plaintiff, some time
thereafter, succeeded to his title and has continued in the
ownership and possession of such property down to the present
time, except that, in 1912, she conveyed to Henry and Lucy
Vaughn the south half of Lot 3 and the south half of Lot 4.
During the entire period of the ownership of her father and
herself, the north half of Lot 4 has been owned by one Clark.
For many years of such ownership, the entire block was
inclosed by a fence in one inclosure and was largely used as
a pasture. The Zollinger residence was the only residence
thereon in 1874, and was situated on or about the center of
the north line of the block. In 1876, Zollinger erected a new
house near the center of the west line of the block and entered
into the occupancy of the same, and this has constituted the
home of the family ever since. Some time during the course
of the occupancy, Clark's lot was fenced off from the rest of
the block. The line of location of such fence is a matter in
dispute, both herein and in another suit between the plaintiff
and Clark. It will be noted from the plat that the alleys in
question are divided by their intersection into four parts.
The facts pertaining to occupancy and improvement are
materially different, as applied to these different parts. Our
consideration of the case will, therefore, deal separately with
these four parts, and they will be referred to in the discussion
as the "west", "north", "east" and "south" alleys. It
will be noted, also, from the plat that the north and south
dimension of Lots 3 and 4 is greater than that of Lots 1
and 2, the first dimension being about 230 feet and the second
about 165 feet, as indicated on the plat. It will be noted, also,
that, until the year 1912, the plaintiff and her immediate
grantors were the owners of the property on both sides of
the south half of the south alley. She claims, however, to

have been in actual possession of the entire south alley, as well as of the entire east alley. At the mouth of the west alley, the elevation of the surface of the ground is about 7 feet higher than the grade of the street. The same is true at the mouth of the north alley. At the mouth of each of the other alleys, the natural surface of the ground is at the grade of the street. Plaintiff's home, which was built in 1876, covers a part of the west alley to the depth of 11 feet. Other improvements appurtenant to the house are laid in such alley, including stone steps and a cement walk extending therefrom to the rear of the house. Because of this situation, the defendant city concedes that an estoppel is shown against it, and it has abandoned its claim to this west alley. We need not, therefore, give further consideration to evidence bearing upon nonacceptance or abandonment, so far as this alley is concerned.

I. We think that the evidence is also sufficient to create an estoppel against the city as to the north alley. The evidence fairly shows that the first house owned and occupied by Zollinger was located upon this alley.

1. ESTOPPEL: equitable estoppel: use of streets and alleys: improvements.

This house was destroyed by fire in 1878. This fact, however, did not deprive Zollinger of his right of occupancy already accrued. This was the holding in *Simplot v. City of Dubuque,* 49 Iowa 630. The claimed estoppel is emphasized at this point by the existence of a certain contract entered into between the plaintiff and the city, a few years ago, whereby Temperance Street, running east and west along the north line of said block was widened, and whereby the plaintiff granted to the city a strip of 5 feet along the north side of such block. We think that the contract then entered into and later performed by both parties was inconsistent with the present claim of right to the alley at this point.

It is our conclusion, therefore, that an estoppel should be found against the defendant city as to such north alley.

II. As to the east and south alleys, we find no facts in

the record which would operate as an estoppel against the city. The plaintiff insists, however, that there never was an acceptance of such alleys by the city and that, for that reason, it has no claim or interest therein. The facts in evidence which tend to show acceptance are the acceptance of the charter and the incorporation of the town, including the addition in question; the use and improvement of such streets and alleys of such addition as seemed at the time necessary; the fact that, in a long chain of title, the property was always conveyed by description of the lots according to the plat and that there was no purported conveyance of the alleys to any grantee, either by the original dedicators or by any successive grantor; that the plaintiff, herself, adopted this form of conveyance in 1912, when she conveyed the property on both sides of the south half of the south alley without conveying the alley itself; that, in 1874, J. R. Zollinger brought an action to quiet his title to Lots 1, 2 and 3 and obtained a decree therein, but made no claim to any alley; that the general taxes which have been assessed and levied against this block have always been so assessed and levied against the lots alone, exclusive of alleys, and in accord with the description contained in the plat, and such has been the manner of listing her property for taxation adopted by the plaintiff in her responses to the assessor; that the plaintiff never had any semblance of paper title to said alleys; that, if there was no acceptance by the city, then the title remained in the original dedicators; that such dedicators had never claimed any interest in said alleys, nor has there been any attempt to vacate the same until the bringing of this suit. The plaintiff insists that special assessments for paving and sewers were made against her for the frontage of these alleys. In the main, however, this occurred with reference to the west and north alleys, and we need not consider the effect of such fact, so far as these alleys are concerned. It is insisted that she paid also a special assessment for the frontage at the

<div style="margin-left:2em">
2. MUNICIPAL CORPORATIONS: streets and alleys: dedication: acceptance: evidence.
</div>

mouth of the east alley. This is disputed by the defendant. The parties disagree in their measurements upon the ground. The plaintiff paid a special assessment upon a basis of 283 feet of frontage. She had an actual frontage, exclusive of the alleys, of 281 feet. There was, therefore, an excess of 2 feet charged against her. It is claimed that she was entitled to a deduction of 5 feet from the north line, by reason of her relinquishment of such strip to the city. If this be granted, it shows an excess of 7 feet charged against her. This would not be sufficient to cover the 16 feet of alley. We thi k the most that can be said at this point is that there was an erroneous computation. It appears, also, that a sidewalk was ordered along the east side of the block by a general published notice to lot owners. The plaintiff, thereupon, employed men and built such sidewalk for her entire frontage, including the alley. This evidence is entitled to consideration, but it is by no means conclusive. The effect of it is clearly offset by the fact that for more than 40 years no general taxation was made or attempted against such alleys.

Appellee claims a revocation of the dedication of the alleys. This claim is predicated upon the form of three mesne conveyances. The chain of title is lengthy. The **3. DEDICATION: revocation: evidence, insufficient.** dedicators conveyed the lots in 1855 and 1857. Through many mesne conveyances, Olive Lamb, the wife of one of the dedicators, became the owner of Lot 1 in 1862. She conveyed the same to Sennet in 1865, "together with our reversionary interest in the alleys in said block". Sennet conveyed to Pattison Lots 1, 2 and 3 and "all our title and interest in and to said Block 1". Pattison conveyed back to Sennet the same lots, "together with all interest reversionary or otherwise in and to said block". Later, Sennet conveyed the lots to Arthur, and Arthur conveyed the same to J. R. Zollinger, the grant in each conveyance being confined to the lots alone.

The facts here set forth could not be deemed a revocation of the alleys. Even if these mesne grantors had power to

revoke the dedication, the language above quoted did not purport to revoke it, nor was it inconsistent with the dedication. Possibly a doubt was implied whether the city would accept the dedication. But even so, the language was consistent with a continuing offer to dedicate. The fact that this language was omitted in the subsequent conveyances (including the conveyance to Zollinger) was a circumstance in the nature of an admission by the respective parties thereto, that the dedication had become effective by acceptance. The same may be said as to the form of conveyance adopted by plaintiff herself in her deeds to the Vaughns.

In explanation of the form of her own conveyance to the Vaughns in 1912, plaintiff testified that she had an oral agreement with her grantees, giving to them the personal right to use the south half of the south alley for access to their property; but that such right was to be limited to them alone and was not to be extended to the public. This agreement was entered into, according to her testimony, not at the time of the conveyance but some time afterwards, and after a house or houses had been erected upon the premises. The only materiality of this testimony for the purpose of this case is its tendency to explain the plaintiff's form of conveyance and render the same consistent with her present claims. It is not persuasive to this end.

In the light of our previous decisions, we think the circumstances appearing in the record are sufficient evidence of acceptance, and that the claim of nonacceptance is not available to the plaintiff. *City of Des Moines v. Hall,* 24 Iowa 234, 243; *McClenehan v. Town of Jesup,* 144 Iowa 352. In the latter case, we said:

"In other words, the acceptance of the dedication of the plat by the public is sufficiently evidenced by the fact that the town has been built thereon, and its streets and alleys have been used and treated as public highways to the extent of the reasonable needs of the population and by extending

the opening and improvement of the streets to the limits of the plat as the growth of population called for such improvement.''

To the same effect, see *Gable v. City of Cedar Rapids,* 150 Iowa 108. Acceptance being shown, the mere adverse possession will not avail the plaintiff. No such improvements are shown upon the east and west alleys as to create an estoppel. It does appear that a maple tree is growing inside the east alley line, and a few box elders upon the south half of the south alley. These all came spontaneously. It is not claimed that they represent labor or expenditure or appreciable value. It is also insisted for the plaintiff that an old buggy shed was at one time located upon the intersection of the alleys, and that this is sufficient to create an estoppel as to the intersection. The evidence is unsatisfactory as to the real location of such buggy shed. It was manifestly of very slight value, whatever the location. The fair inference from the entire record is that its location in reference to the alleys was substantially the same as that of the present outhouse shown upon the plat set forth herein.

4. MUNICIPAL CORPORATIONS: streets and alleys: adverse possession; estoppel: improvements.

We reach the conclusion, upon the whole record, that the plaintiff is entitled to maintain her occupancy of the west alley up to the west line of the intersection and of the north alley down to the north line of such intersection, and that the defendant city is entitled to open the south and east alleys and the intersection. The decree entered below will be accordingly modified.—*Modified* and *Affirmed.*

DEEMER, C. J., WEAVER and GAYNOR, JJ., concur.